ALAN R. SMITH, ESQ. #1449
Law Offices of Alan R. Smith
505 Ridge Street
Reno, Nevada  89501
Telephone (775) 786-4579
Facsimile (775) 786-3066
*Email:* mail@asmithlaw.com
             ars@asmithlaw.com
             turk@asmithlaw.com
             marsh@asmithlaw.com

Attorney for Debtors

*ELECTRONICALLY FILED*
*July 23, 2009*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

—ooOoo—

In Re:

WES CONSTRUCTION COMPANY, INC., a Nevada corporation,

HEAVY EQUIPMENT SERVICES, LLC, a Nevada limited liability company,

TRUCKING SERVICES, LLC, a Nevada limited liability company,

    Debtors.
_____/

Case No. BK-N-09-52177-GWZ (Lead)
Case No. BK-N-09-52178-GWZ
Case No. BK-N-09-52181-GWZ
(Jointly Administered)

**MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT AND TO MAKE CERTAIN DISTRIBUTIONS**

Hearing Date: [OST Pending]

    The above-captioned jointly administered debtors (hereinafter collectively "Debtors"), by and through their proposed counsel, ALAN R. SMITH, ESQ. of the LAW OFFICES OF ALAN R. SMITH, hereby request an order approving global settlement and compromise entered into between WES Construction Company, Inc. (hereinafter "WES") and certain affiliates, and ROY WALKER and certain related entities (hereinafter collectively referred to as "Walker").  Furthermore, the motion seeks authorization for making disbursements to Aaron B. Fricke, Esq. for services rendered in connection with negotiating and implementing the settlement set forth herein, to Alan R. Smith, Esq. in the amount of $60,000.00 for a retainer in connection with these bankruptcy cases, and for the balance distributable to the Debtors to be used in their ordinary business operations. This motion is made pursuant to F.R.Bankr.P. 9013, 9014 and 9019, and is based upon the points and authorities

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\WES Constr\Mot Appr Settlmt\Mot Appr Settlmt FINAL 072309-lpb.wpd

set forth below, the pleadings and papers on file in this case, and as such other matters as may appear at any oral hearing hereon.

## POINTS AND AUTHORITIES

### A.  BACKGROUND FACTS.

1. The above-captioned Debtors filed their Voluntary Petitions under Chapter 11 of the Bankruptcy Code on July 6, 2009 ("Petition Date"), which cases have been ordered to be jointly administered.

2. Prior to commencement of the bankruptcy case, WES engaged Kurt O. Hunsberger, Esq. ("Hunsberger"), and Aaron B. Fricke, Esq. ("Fricke"), of the law firm Maupin, Cox & LeGoy ("MCL"), in order to pursue a claim against Walker and certain affiliated entities. The claims asserted against Walker and the affiliated entities relate to Walker's conduct while president of WES, Walker's handling of the affairs of WES and dealings with certain of his affiliates on behalf of WES, alleged improper distributions from WES to Walker and certain of his affiliates, and the alleged breaches of fiduciary duty, breaches of conduct, breaches of good faith and fair dealing, and misappropriation and unjust enrichment.

3. Prior to the Petition Date, Hunsberger and Fricke conducted substantial research into the actions of Walker, made various demands upon Walker and his affiliates based upon damages incurred by WES. As of the Petition Date, Hunsberger and Fricke were in the process of preparing a complaint to be filed against Walker and his affiliates.

4. Subsequent to the Petition Date, a global settlement agreement was reached among the parties as more specifically set forth below.

### B.  THE GLOBAL SETTLEMENT.

On July 21, 2009, the parties entered into a settlement agreement and mutual release of claims, a copy of which is attached hereto as Exhibit "A" and incorporated by reference herein (the "Settlement Agreement"). Walker and WES have agreed on the settlement provisions, although the attached copy is not signed there are some outstanding issues with Northstar Trust Company which the Debtor believes will be resolved by July 24, 2009. A fully executed Settlement Agreement will be filed as soon as possible. The significant terms of the settlement are summarized as follows:

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\WES Constr\Mot Appr Settlmt\Mot Appr Settlmt FINAL 072309-lpb.wpd  - 2 -

1. Walker and his affiliates are to receive the broadest release possible, specifically including, without limitation, all claims that may be brought by any of the Debtors or their affiliates, or derivative through any of the Debtors or their affiliates, which release is intended to be as broad as allowed under applicable bankruptcy and non-bankruptcy law.

2. WES will receive the sum of $486,289.29 cash.

3. WES will receive all of the net proceeds from the sale of certain assets of WES Trucking, Inc. (hereinafter "WTI"), an entity owned by Walker, which net proceeds are estimated in the range of $100,000.00.

4. Upon plan confirmation, Walker assigns to Northstar Trust (hereinafter "Northstar"), as trustee of the WES Employee Stock Ownership Trust, all interests of Walker in notes that are payable by WES to Walker or other affiliated entities.

5. Walker agrees to continue to be obligated to supply bonding requirements necessary for the continued operation of WES in the amount of $1,100,000.00 for a period of four years or until earlier termination by mutual agreement.

6. The Settlement Agreement allows Walker notice and access to board meetings, together with monthly reports of the operation of WES.

7. The lease agreement between WES and Green Tea, LLC (an entity related to Walker) is modified to reduce the lease payment from $16,800.00 per month to $4,000.00 per month during the period of the chapter 11 case. This is the primary business location of WES.

8. Walker will remain as a qualified individual with the Nevada Contractor's Board with regard to continued operations of WES for a period of up to one year.

9. Walker and WES will cooperate in negotiating the sale of certain equipment and property to Walker.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\WES Constr\Mot Appr Settlmt\Mot Appr Settlmt FINAL 072309-lpb.wpd  - 3 -

      10.     Walker receives a release from Northstar Trust Company under certain terms and conditions.

### C.    LEGAL ANALYSIS.

The Bankruptcy Court may approve a compromise or settlement agreement between an estate and another party pursuant to F.R.Bankr.P. 9019(a) which provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

In the Ninth Circuit, four factors must be considered in determining the fairness and reasonableness of a settlement, which are (1) the likelihood of success on the merits of the underlying litigation with due consideration for uncertainty in the facts and law; (2) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; (3) difficulties, if any, to be encountered in collection; and (4) paramount interest of creditors and proper deference to their reasonable views in the premises. In re A & C Properties, 784 F.2d 1377 (9th Cir. 1986). Compromises are favored under the Bankruptcy Code, and approval of a compromise rests on the sound discretion of the Court. Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968), *reh. den.* 392 U.S. 909, 20 L. Ed. 2d 425, 88 S. Ct. 1157 (1968); In re A & C Properties, 784 F.2d at 1380-81. If the compromise is fair and equitable and in the best interests of the creditors, the Court may approve the compromise. TMT Trailer Ferry, 390 U.S. at 424; Jacobson v. Robert Speece Properties, Inc., 159 B.R. 314, 317 (Bankr. E.D. Cal. 1993). The Bankruptcy Court is afforded wide latitude in approving compromise agreements which it determines to be fair, reasonable and adequate. In re Woodson, 839 F.2d 610 (9th Cir. 1988). The Court need not conduct an exhaustive investigation into the claim sought to be compromised. In re Walsh Construction, Inc., 699 F.2d 1325, 1328 (9th Cir. 1982).

    **1.**    **Likelihood of Success on the Merits.**

The claims asserted by WES against Walker are multiple and complex. *See* Declaration of Aaron B. Fricke, Esq. In Support Of Motion For Order Approving Settlement Agreement And To Make Certain Distributions, filed in connection with this motion (the "Fricke Declaration").

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\WES Constr\Mot Appr Settlmt\Mot Appr Settlmt FINAL 072309-lpb.wpd - 4 -

1  Although WES believes it will prevail on the litigation, it is virtually impossible to assess a
2  percentage for probability of success. Due to the complexity of the transactions, any liability of
3  Walker or his affiliates can only be determined after considering all of the facts and full trial on the
4  merits. The probability of success by WES is uncertain.

### 2. Complexity Of The Litigation.

The claims against Walker include alleged improper payments to affiliates of Walker, alleged improper lease charges by Walker, alleged improper disbursements from the sale of equipment to Walker or related entities, alleged improper billings for the sale of aggregate, alleged improper billings for brokering the use of equipment owned by WES, improper accounting relating to the acquisition of Commercial Snowclearing, LLC by WES, as well as other claims against Walker for malfeasance and misfeasance. The claims are extensive and complex, and require detailed and time consuming accountings. Walker disputes all of the allegations. The proposed settlement provides for global resolution and an orderly means of liquidation that will put an end to a potential complex legal battle. *See* Fricke Declaration.

### 3. Difficulties In Collection Of A Judgment.

Even if WES were to prevail in the litigation, there would likely be resulting appeals. Due to the delay in collection, and the current instability of the market, the Debtors are uncertain whether they would be able to collect a judgment, even if one was ultimately obtained. *See* Fricke Declaration.

### 4. Interests Of Creditors.

The interests of creditors weigh heavily in favor of approving the proposed settlement. The proposed settlement avoids significant legal expenses and delay, and avoids the costs of collection. The settlement provides much needed cash which will enable the Debtors to continue operations, all of which will benefit the unsecured creditors. In the event the settlement is not consummated, it is uncertain whether the Debtors will be able to continue the operation of their business, and it is uncertain whether the Debtors will be sufficient funds to continue a litigation against Walker.

### D. EFFECTIVE DATE.

Pursuant to the Settlement Agreement, the parties have negotiated its effective date to be the

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\WES Constr\Mot Appr Settlmt\Mot Appr Settlmt FINAL 072309-lpb.wpd  - 5 -

1 date of entry of this Court's order approving the compromise. The Motion is governed by
2 Fed.R.Bankr.P. 9014 and 9019, and is a contested matter pursuant to Rule 9013. The 1999
3 Amendments to Rule 9014 contemplate that the automatic 10-day stay upon entry of an order
4 pursuant to Rule 7062 does not apply:

> Rule 7062 provides that Rule 62 F.R.Civ.P., which governs stays of proceedings to enforce a judgment is applicable in adversary proceedings. The provisions of Rule 62, included the ten-day automatic stay of the enforcement of a judgment provided by Rule 62(a) and the stay as a matter of right by posting a supersedeas bond provided in Rule 62(d), are not appropriate for most orders granting or denying motions governed by Rule 9014.

9 Accordingly, the Debtors request the Court order the Settlement Agreement effective as of the date
10 of entry of the Court's order approving the settlement.

11         **E.**        **DISTRIBUTION TO MAUPIN, COX & LEGOY.**

12       MCL were employed by the Debtors in or about February 2009 in order to pursue
13 claims against Walker and his affiliates. As set forth in Fricke Declaration, MCL has
14 engaged in substantial investigation concerning the extent of the claims against Walker and
15 his affiliates, has issued demand letters to counsel for Walker and his affiliates, has engaged
16 in extensive negotiations to resolve the matter, and through the efforts of MCL the
17 Settlement Agreement has been reached. The Settlement Agreement is of substantial benefit
18 to the Debtors as set forth herein above.

19       MCL asserts an attorney's lien on the settlement proceeds for its fees. Pursuant to
20 Nevada Revised Statue §18.015:

> 1. An attorney at law shall have a lien upon any claim, demand or cause of action, including any claim for unliquidated damages, which has been placed in his hands by a client for suit or collection, or upon which a suit or other action has been instituted. The lien is for the amount of any fee which has been agreed upon by the attorney and client. In the absence of an agreement, the lien is for a reasonable fee for the services for which the attorney has rendered for the client on account of the suit, claim, demand, or action.
>
> 2. An attorney perfects his lien by serving notice in writing, in person or by certified mail, return receipt requested, upon his client and upon the party against whom his client has a cause of action, claiming the lien and stating the interest with which he has in any cause of action.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\WES Constr\Mot Appr Settlmt\Mot Appr Settlmt FINAL 072309-lpb.wpd

6

  3. The lien attaches to any verdict, judgment or decree entered and to any money or property which is recovered on account of the suit or other action, from the time of service of the notices required by this section.

Section 362(b)(3) exempts from the automatic stay:

  Under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under Section 546(b) of this title, or to the extent that such act is accomplished within the period provided under Section 547(e)(2)(A) of this title;

Section 546(b)(1)(A) provides that the powers of the trustee under Section 544, 545 and 549 are subject to any generally applicable law that "permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; ..."

Accordingly, an attorney's lien may be perfected by the service of a notice that occurs after the commencement of the bankruptcy case. See In re Pacific Far East Line, Inc., 654 F.2d 664, 669 (9th Cir. 1980) (attorney's lien depends on intent of parties and survives bankruptcy); In re Bouzas, 294 B.R. 318, 322 (N.D. Cal. 2003) ("In the Ninth Circuit, an attorney's charging lien is enforceable in bankruptcy even if the judgment has not been rendered at the time the bankruptcy petition is filed"); In re Fitzsimmons, 51 B.R. 600, 613 (9th Cir. BAP 1985) (attorney's lien does not require a contract). Furthermore, the attorney's lien is a charge against proceeds recovered in connection with a matter for which the attorney was employed, even if such proceeds were collected post-petition. In re Pacific Far East Line, Inc., *supra*. As set forth in the Fricke Declaration, MCL was responsible for implementing the settlement with Walker, has served the appropriate attorney's lien notices, and accordingly has a lien upon the Walker proceeds. The Debtors request in this motion authority to distribute the sum of $69,377.99 (adjusted to the date of settlement completion) to MCL in payment of such attorneys' fees that are subject to the attorney's lien.

  **F. DISTRIBUTIONS TO DEBTORS' COUNSEL FOR RETAINER.**

As set forth in the Declaration of Michael Brandt, filed in connection herewith, the Debtor was unable to pay a pre-petition retainer to the Law Offices of Alan R. Smith because of cash shortages in the Debtors' bank account, primarily due to the close scrutiny placed upon the account by MB Financial Bank, N.A. (hereinafter "MB Financial"). The Debtors request authority herein to pay a $60,000.00 retainer to Alan R. Smith, Esq., pursuant to its agreement to employ Alan R.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\WES Constr\Mot Appr Settlmt\Mot Appr Settlmt FINAL 072309-lpb.wpd - 7 -

Smith, Esq. as its counsel.

## G. DISTRIBUTION OF BALANCE OF PROCEEDS TO DEBTOR FOR USE IN GENERAL OPERATIONS.

The Debtors seek to use the balance of the proceeds obtained from the Settlement Agreement in the general operation of its business. MB Financial has asserted, through its counsel, at the time of the hearing on the first day motions on July 15, 2009, that it has a security interest in all of the assets of the Debtors, particularly including any sum obtained from Walker on account of any settlement. MB Financial bases its assertion upon its allegation that it is secured by all accounts receivable of the Debtor pursuant to a security agreement, as well as a UCC-1 Financing Statement. Certain security agreements and financing statements are attached to the Declaration of Mark Kosminskas In Support of Opposition of Limited Objection to Debtors' Emergency Motion for Authority to Employ Auctioneer and Conduct Public Sale of Assets (the "Kosminskas Declaration") [Lead Case Dkt. No. 35]. Exhibit C to the Kosminskas Declaration identifies security agreements with Trucking Services, LLC, WES Holdings, Inc., Heavy Equipment Services, LLC. Although the security agreement with WES is not attached, its form is identical, and a copy is attached hereto as Exhibit "B". The security agreement was perfected by the recordation of a UCC-1 Financing Statement filed with the Secretary of State in the State of Nevada, a copy of which is attached hereto as Exhibit "C." Exhibit A to the security agreement provides that MB Financial is secured by:

> 1. All 'Accounts' (as such term is defined in Article 9 of the Uniform Commercial Code in effect in the State of Illinois ("UCC")) now owned or hereafter acquired by Debtor, and including, without limitation, all accounts receivable, book debts, and other forms of obligations (to the extent not constituting obligations evidenced by Chattel Paper, Documents, or Instruments) now owned hereafter received or acquired by or belonging or owing to Debtor, (including without limitation, under any trade name, style or division thereof) whether arising out of goods sold or services rendered by Debtor or from any other transaction, whether or not the same involves the sale of goods or services by Debtor and all of Debtor's rights in, to, and under all purchase orders or receipts now owned or hereafter acquired by it for goods or services, and all of Debtor's rights to any goods represented by any of the foregoing (including without limitation unpaid seller's rights or recission, replevin, reclamation, and stoppage in transit and rights to returned, reclaimed or repossessed goods) and all monies due or to become due to Debtor under all purchase orders and contracts for the sale of goods or the performance of services or both by Debtor (whether or not yet earned by performance on the part of Debtor or in connection with any other transaction) now in existence or hereafter occurring, including, without limitation, the right to receive the proceeds of said purchase orders and contracts, and all collateral and security and guarantees of any kind given by any

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\WES Constr\Mot Appr Settlmt\Mot Appr Settlmt FINAL 072309-lpb.wpd

8

1     person with respect to any of the foregoing, whether or not any of the foregoing is included within the definition of 'accounts' in the UCC.

The claim against Walker and his affiliates is not an account receivable within the definition of either the financing statement or the security agreement. The claim against Walker is not a receivable associated with "goods sold or services rendered by debtor or from any other transaction...", nor is it for monies due on account of a purchase order or contract for the sale of goods, or performance of services. The Uniform Commercial Code ("UCC") defines "Account" as including "a right to payment of a monetary obligation, whether or not earned by performance, for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of; for services rendered or to be rendered; ..." NRS 104.9102(1)(b). "The term does not include .. commercial tort claims ..." Id. Black's Law Dictionary defines "account receivable" as "A debt, owed to an enterprise, that arises in the normal course of business dealings and is not supported by negotiable paper. For example, the charge accounts of a department store.... A claim against a debtor usually arising from sales or services rendered; not necessarily due or past due." Black's Law Dictionary, 5th Ed. The claim of WES against Walker is clearly not an "account receivable" under the definition of "Accounts" in the security agreement and UCC-1 Financing Statement, nor is it an account receivable within the definition of the UCC.[1]

The security agreement and UCC-1 Financing Statement also provide that MB Financial has a security interest in "all Commercial Tort Claims (as such term is defined in Article 9 of the UCC) now or hereafter owned or acquired by Debtor." Although the UCC allows for a security interest in commercial tort claims, Section 104.9204(2)(b) provides that:

> 2. A security interest does not attach under a term constituting an after-acquired property clause to: ...
>
> (b) A commercial tort claim.

---

[1] Both the security agreement and the UCC-1 refer to the Uniform Commercial Code in effect in the State of Illinois. A comparison with the statues of Nevada show identical language. See 810 ILCS5/9-102, 9-108(e), and 9-204(b)(2).

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\WES Constr\Mot Appr Settlmt\Mot Appr Settlmt FINAL 072309-lpb.wpd

9

1   Furthermore, as set forth in NRS 104.9108(5)(a) "A description only by type of collateral
2   defined in the Uniform Commercial Code is an insufficient description of: (a) A commercial tort
3   claim; ..."
4   In order to create a perfected security interest in a commercial tort claim, the claim must be
5   in existence at the time of the security agreement, and must be specifically described. Accordingly,
6   MB Financial does not have a perfected security interest in the proceeds derived from Walker under
7   the Settlement Agreement.

## **CONCLUSION**

Based upon the foregoing, the Debtors request entry of an order (1) approving the Settlement Agreement; (2) authorizing the payment of Maupin, Cox & LeGoy the sum of $69,377.99 from the proceeds received under the settlement; (3) authorizing the payment of a retainer to Alan R. Smith, Esq. in the amount of $60,000.00; and (4) authorizing the distribution of the remainder of the proceeds from the Walker settlement to the Debtors.

DATED this 23rd day of July, 2009.

LAW OFFICES OF ALAN R. SMITH

By: */s/ Alan R. Smith*
ALAN R. SMITH, ESQ.
Attorney for Debtors

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\WES Constr\Mot Appr Settlmt\Mot Appr Settlmt FINAL 072309-lpb.wpd    - 10 -