1  ALAN R. SMITH, ESQ., #1449
   Law Offices of Alan R. Smith
2  505 Ridge Street
   Reno, Nevada  89501
3  Telephone: (775) 786-4579
   Facsimile: (775) 786-3066
4  **email: mail@asmithlaw.com**

5  Attorney for Debtor

6

7

8                    UNITED STATES BANKRUPTCY COURT

9                         DISTRICT OF NEVADA

10                            —ooOoo—

11  In re:                              Case No.  BK-N-09-52177-GWZ
                                        *Joint Administration With*
12  WES    CONSTRUCTION    COMPANY,     Case No. BK-N-09-52178-GWZ
    INC., a Nevada corporation,         Case No. BK-N-09-52181-GWZ
13                                      Chapter 11
            Debtor.
14  _____/   **DECLARATION OF ALAN R. SMITH,**
                                        **ESQ. IN SUPPORT OF ORDER RE:**
15  In re:                              **MOTION FOR ORDER APPROVING**
                                        **SETTLEMENT AGREEMENT AND TO**
16  HEAVY EQUIPMENT SERVICES, LLC, a    **MAKE CERTAIN DISTRIBUTIONS**
    Nevada limited liability company,
17
            Debtor.
18  _____/   Hearing Date:   July 28, 2009
                                        Hearing Time:   3:00 p.m.
19  In re:

20  TRUCKING SERVICES, LLC, a Nevada
    limited liability company,
21
            Debtor.
22  _____/

23          I, ALAN R. SMITH, ESQ., hereby declare under penalty of perjury that the following

24  assertions are true:

25          1.      I am proposed counsel for the Debtor in this case.  I have personal

26  knowledge of the facts herein stated, and if called to testify, I could and would do so

27  competently.

28          2.      On July 28th and 29th, 2009, the Court conducted a hearing on the Debtor's

ELECTRONICALLY FILED - 7/29/09

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\WES Constr\Mot Appr Settlmt\decl ars 072909-plt.wpd

1  Motion For Order Approving Settlement Agreement And To Make Certain Distributions.

2  The Court entered its ruling, as well as its oral findings of fact and conclusions of law on

3  the record.

4          3.    I prepared the written order consistent with the Court's ruling, and circulated

5  it to counsel pursuant to Local Rule 9021 for their approval.  A true copy of the first

6  proposed order is attached hereto as **Exhibit A** and incorporated herein by reference.

7          4.    William B. Cossitt, Esq., attorney for the United States Trustee, made certain

8  objections to the proposed Order. Mr. Cossitt's emails are attached collectively hereto as

9  **Exhibit B** and incorporated herein by reference.

10          5.    I received subsequent emails from counsel as follows:

11              (A)    Emails from Aaron B. Fricke, Esq., attached collectively hereto as

12                      **Exhibit C** and incorporated herein;

13              (B)    Emails from Bruce T. Beesley, Esq., and Laury McCauley, Esq.,

14                      attached collectively hereto as **Exhibit D** and incorporated herein;

15              (C)    Emails from Timothy A. Lukas, Esq., attached collectively hereto as

16                      **Exhibit E** and incorporated herein.

17          6.    I have revised the Order consistent with some of the requested changes

18  which I believe comports to the Court's ruling.  A true copy of the revised Order is attached

19  hereto as **Exhibit F** and incorporated herein.  However, as the Settlement Agreement has

20  already been executed by the parties, I did not make the requested changes to the

21  Settlement Agreement itself.  To the extent the requested changes are matters which

22  were not raised at the hearing or ordered by the Court, I did not make those changes.

23          7.    In light of the emergency nature of this matter as a result of the Debtor's

24  urgent need for the payment of the $100,000, it is imperative that the disputes concerning

25  the language of the Order be resolved immediately, and that the Order be entered.

26  / / /

27  / / /

28  / / /

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\WES Constr\Mot Appr Settlmt\decl ars 072909-plt.wpd     - 2 -

1    Accordingly, I request that the Court conduct an emergency telephone conference as

2    soon as possible.

3            DATED this 29th day of July, 2009.

4

5                                            */s/ Alan R. Smith*

6                                            _____
                                             ALAN R. SMITH

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit "A"

**Peggy Turk**

| | |
|---|---|
| **From:** | Peggy Turk [turk@asmithlaw.com] |
| **Sent:** | Wednesday, July 29, 2009 2:55 PM |
| **To:** | 'BBEESLEY'; 'Cossitt, Bill  (USTP)'; 'tlukas@hollandhart.com'; 'africke@mclrenolaw.com' |
| **Cc:** | 'Mike Brandt' |
| **Subject:** | WES - Proposed Order Approving Settlement |
| **Attachments:** | image001.jpg; order 072909-plt.pdf |

Gentlemen:  Pursuant to LR 9021, attached is the proposed Order Re: Motion For Order Approving Settlement Agreement And To Make Certain Distributions.   Please provide me with your signatures as soon as possible, or your suggested revisions.

Peggy Turk

Peggy L. Turk, Paralegal
LAW OFFICES OF ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579
(775) 786-3066 (facsimile)
turk@asmithlaw.com

*The information contained in this Email is information protected by the attorney-client and/or the attorney work product privilege.  It is intended only for the use of the individual(s) named above and the privileges are not waived by virtue of this message having been sent via electronic mail.  If the person actually receiving this Email or any other reader of the Email is not the named recipient or the employee or agent of the named recipient, any use, dissemination, distribution or copying of the communication is strictly prohibited.  If you have received this communication in error, please immediately notify the sender by telephone or Email and destroy all versions of this Email.  Thank you.*

**Tracking:**

1

2

3

4

5

6   *Submitted by:*
    ALAN R. SMITH, ESQ., #1449
7   Law Offices of Alan R. Smith
    505 Ridge Street
8   Reno, Nevada  89501
    Telephone: (775) 786-4579
9   Facsimile: (775) 786-3066
    **email: mail@asmithlaw.com**
10
    Attorney for Debtor
11

12

13                  UNITED STATES BANKRUPTCY COURT

14                        DISTRICT OF NEVADA

15                           —ooOoo—

16  In re:                                  Case No.  BK-N-09-52177-GWZ
                                            Joint Administration With
17  WES    CONSTRUCTION    COMPANY,         Case No. BK-N-09-52178-GWZ
    INC., a Nevada corporation,             Case No. BK-N-09-52181-GWZ
18                                          Chapter 11
            Debtor.
19  _____/    **ORDER  RE:  MOTION  FOR  ORDER
                                            A P P R O V I N G    S E T T L E M E N T**
20  In re:                                  **AGREEMENT AND TO MAKE CERTAIN
                                            DISTRIBUTIONS**
21  HEAVY EQUIPMENT SERVICES, LLC, a
    Nevada limited liability company,
22                                          Hearing Date:   July 28, 2009
            Debtor.                         Hearing Time:   3:00 p.m.
23  _____/

24  In re:

25  TRUCKING SERVICES, LLC, a Nevada
    limited liability company,
26
            Debtor.
27  _____/

28          The matter of the Debtor's Motion For Order Approving Settlement Agreement And

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\WES Constr\Mot Appr Settlmt\order 072909-plt.wpd

To Make Certain Disbursements [Doc. #37] came on for hearing on shortened time on July 28, 2009.  The Debtor appeared through its proposed counsel, Alan R. Smith, Esq., and proposed special counsel, Aaron B. Fricke, Esq., of Maupin, Cox & LeGoy, LLP;  MB Financial Bank, N.A. (the "Bank"), appeared through its counsel, Bruce T. Beesley, Esq., of Lewis & Roca, LLP; Timothy A. Lukas, Esq., of Holland & Hart, LLP, appeared on behalf of the purchasers; and William B. Cossitt, Esq., appeared on behalf of the United States Trustee.  The Court considered the argument of counsel and various objections and arguments raised in the pleadings and orally by the parties.  The Court considered the best interest of the estate, and orally entered its findings of fact and conclusions of law on record pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.  Having found that good cause exists,

IT IS HEREBY ORDERED as follows:

1.    The settlement between the Debtor and Roy Walker (and related entities as set forth in the agreement between the parties) (collectively "Walker"), is hereby approved in the form attached hereto as Exhibit A and incorporated herein by reference (the "Settlement Agreement").

2.    Walker shall as soon as practical pay to the Debtor the sum of $100,000.00 from the proceeds due under the Settlement Agreement.  The remaining proceeds due under the Settlement Agreement shall be paid as soon as practical by Walker to Debtor's proposed counsel, Alan R. Smith, Esq., to be held in a segregated trust account from which no disbursements shall be made until further order of this Court.

3.    The Debtor is authorized to use $100,000.00 from the settlement proceeds to pay its normal operating costs and to gear up for bidding new jobs. However, the Debtor is not authorized to pay any pre-petition claims other than as previously ordered by the Court.

4.    The Debtor shall not pay professional fees to its attorneys pending further order of the Court.

5.      The Court shall consider the dispute between the Debtor and the Bank as to the Bank's alleged security interest in the settlement proceeds as a contested matter pursuant to Fed. R. Bankr. P. 9014, and will conduct an evidentiary hearing on August 17, 2009, at 10:00 a.m., to determine the validity of MB Financial Bank's claim against the proceeds derived from the Settlement Agreement.

6.      The parties may file additional briefing concerning the legal issues no later than August 14, 2009, with a copy thereof delivered to Chambers.

7.      The parties shall cooperate to conduct discovery on shortened time prior to August 14, 2009.

Approved/Disapproved:                    Approved/Disapproved:

Lewis & Roca, LLP                          Holland & Hart, LLP

By_____     By_____
     Bruce T. Beesley, Esq.               Timothy A. Lukas, Esq.
     Attorney for MB Financial Bank, N.A.     Attorney for Roy Walker

Approved/Disapproved:                    Approved/Disapproved:

Maupin, Cox & LeGoy, LLP             Office of the United States Trustee

By_____     By_____
     Aaron B. Fricke, Esq.              William B. Cossitt, Esq.
     Special Counsel for Debtor

####

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\WES Constr\Mot Appr Settlmt\order 072909-plt.wpd     - 3 -

Exhibit "A"

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF ALL CLAIMS

This Settlement Agreement and Mutual Release of all Claims ("Agreement") is made and entered into on July 28 2009 ("Effective Date"), by and among ROY A. WALKER, an individual ("WALKER"), RIVER CANYON ENTERPRISES, LLC ("RCE"), a Nevada limited liability company, RIVER CANYON ENTERPRISES 2, LLC ("RCE2"), a Nevada limited liability company, RIVER CANYON ENTERPRISES 3, LLC ("RCE3"), a Nevada limited liability company, DOUBLE R EQUIPMENT ("DRE"), a Nevada corporation, GREEN TEA, LLC ("GT"), a Nevada limited liability company, and COMMERCIAL SNOW CLEARING, LLC ("CSC"), a Nevada limited liability company, on one hand, and W.E.S. TRUCKING, INC. ("WTI"), a Nevada corporation, WES HOLDINGS, INC. ("HOLDINGS"), a Nevada corporation, WES CONSTRUCTION COMPANY, INC. ("WES"), a Nevada corporation, HEAVY EQUIPMENT SERVICES, LLC ("HES"), a Nevada limited liability company, TRUCKING SERVICES, LLC ("TS"), a Nevada limited liability company, on the other hand, and is made with reference to the following facts:

### RECITALS

A.    WALKER was the majority stockholder of WES until October 31, 2005, when WALKER sold his stock pursuant to a leveraged Employee Stock Ownership Plan ("ESOP") buyout of WES, in exchange for cash and the following promissory notes: (i) $4,803,341.20 Subordinated Promissory Note dated October 31, 2005, payable to Roy A. Walker by WES Construction Company, Inc., and (ii) $342,562.00 Subordinated Promissory Note dated October 27, 2005, payable to Roy A. Walker by WES Holdings, Inc. (collectively, the "ESOP Notes").

B.    Pursuant to the ESOP buyout, HES and TS were sold to HOLDINGS.

C.    When the ESOP transaction closed, WALKER was retained as President of WES pursuant to an employment agreement which included certain restrictive covenants.  WALKER resigned as President of WES on October 7, 2008, and his employment by WES ended on December 19, 2008.  During his employment by WES, WALKER maintained, and still maintains a bonding collateral facility for WES's benefit (the "Bonding Collateral Facility").

D.    From and after the closing of the ESOP transaction, WALKER was an owner, and/or officer, and/or manager and/or, director of several other entities including, without limitation, RCE, RCE2, RCE3, WTI, DRE, GT, CSC (all such entities, whether a party to this Agreement or not, are referred to collectively as "WALKER AFFILIATES"), all or some of which had certain business dealings with WES and/or its affiliates.

E.    As a result of allegations regarding certain acts or omissions by WALKER and/or certain of the WALKER AFFILIATES from and after the closing of the ESOP transaction, HOLDINGS, WES, HES, and TS (hereinafter "WES GROUP") have asserted that they have legal claims against WALKER and/or certain of the WALKER

1

AFFILIATES. WALKER and WALKER AFFILIATES deny all such allegations of WES GROUP. All of the potential claims against WALKER and/or certain of the WALKER AFFILIATES belonging to WES GROUP of whatever nature are hereinafter referred to as the "WES GROUP CLAIMS."

F.     As a result of allegations regarding certain acts or omissions by members of the WES GROUP from and after the closing of the ESOP transaction, WALKER and/or certain of the WALKER AFFILIATES (hereinafter "WALKER GROUP") have asserted that they have legal claims against members of the WES GROUP. WES GROUP members deny all such allegations of WALKER GROUP. All of the potential claims against WES GROUP members belonging to WALKER GROUP of whatever nature are hereinafter referred to as the "WALKER GROUP CLAIMS."

G.     On December 24, 2008, WALKER paid WES (a member of the WES GROUP) $400,000.00 (the "2008 Payment") for the purpose of settling one or more of the WES GROUP CLAIMS, but no settlement agreement was reached or entered into among the parties at that time.

H.     The WES RELEASING PARTIES have, with the assistance of counsel and independent accountants, considered whether they have any claims against WALKER or any of the WALKER AFFILIATES with respect to the valuation of WES and the resulting implementation and closing of the ESOP transaction. These claims, having been duly considered over a lengthy period of time, were found not to have merit and therefore are among the claims expressly being released in Paragraph 2(a) of this Agreement.

I.     The aforementioned parties have now, after negotiations among them, agreed to settle and fully resolve forever all disputes between them on the basis of the terms and conditions set forth below.

NOW, THEREFORE, in light of the foregoing facts, for good and valuable consideration given in exchange for a complete and comprehensive mutual release and waiver as set forth below, the parties hereby AGREE to finally and completely compromise and settle their disputes, and any and all of their claims, whatever they may be, upon the following terms and conditions:

## TERMS AND CONDITIONS

1.     _Consideration_. In addition to the 2008 Payment paid to WES by WALKER and/or the WALKER AFFILIATES, the consideration for this Agreement and for the mutual release of all claims below, consists of the following:

(a.) On the earlier of July 2̲8̲, 2009 or the date of entry of a written order by the Bankruptcy Court approving this Agreement, WALKER shall pay WES $411,289.29 by means of a cashiers' check payable to "WES CONSTRUCTION COMPANY, INC., and MAUPIN, COX & LEGOY, Counsel for WES CONSTRUCTION COMPANY, INC.", to be deposited into the client

trust account maintained by MAUPIN, COX & LEGOY, and pay the balances due to Heritage Bank of Nevada on credit cards issued to WES or its employees (current or former) in the amount of $13,710.71. The foregoing $425,000.00 and the 2008 Payment shall be allocated by the WES GROUP in accordance with <u>Schedule A</u> attached hereto and incorporated herein by this reference;

(b.) If WALKER or the WALKER AFFILIATES (or any of them) incur any costs or fees related to legal actions or proceedings being commenced against any of them by any persons or entities that are not a party to this Agreement, WALKER shall have a Chapter 11 administrative claim for such costs and fees, not to exceed the aggregate amount of $200,000.00 (subject to allowed administrative attorneys' fees for debtor);

(c.) WALKER has not objected, and will not object to the sale of WTI equipment at a Ritchie Brothers' auction to be held on Tuesday, July 21, 2009, in Dunnigan, California, and will authorize the distribution of the net proceeds of the sale, after payment in full of all amounts owed to WELLS FARGO BANK, N.A. with respect to such equipment, directly to WES. The parties agree to characterize and treat the sales of WTI and CSC (1) as having closed effective January 1, 2008, (2) as sales and purchases of equity, not assets, and (3) the $408,943 attributable to such sales shall be allocated $368,943 to WTI and $40,000 to CSC.

(d.) WALKER will continue and is hereby obligated to provide the Bonding Collateral Facility, in substantially the manner in which it is in place on the Effective Date, to WES until the earlier to occur of (1) the dismissal or conversion to Chapter 7 status of WES' pending Chapter 11 bankruptcy proceeding, or (2) the fourth (4th) anniversary of the Effective Date, on the express conditions that, as long as the Bonding Collateral Facility is in place:

> (1.) WALKER will be notified at least five (5) business days in advance of all meetings of the Board of Directors of WES, and furnished an agenda prior to each such meeting, and shall be allowed to observe and participate in all Board meetings or discussions involving the viability or approval of jobs and the use of the Bonding Collateral Facility. To be effective, any such notice must be acknowledged as received by WALKER and if WALKER is not physically present for same he shall be permitted to attend telephonically; provided, however, if WALKER does not acknowledge receipt of notice within three (3) business days, then WALKER will be deemed to have received such notice. No decisions shall be made or action taken with respect to any aspects of the Bonding Collateral Facility (including, without limitation, the assumption of any new projects or bids that rely on the Bonding Collateral Facility) unless the foregoing provisions are complied with in all material respects. Board Meetings or discussions involving the viability or approval of jobs and the use of the Bonding Collateral Facility. WES and WALKER will both cooperate in good faith and seek to arrive at mutual agreement with regard to the continued use of the Bonding Collateral Facility.

(2.)  WES will promptly provide WALKER with monthly reports of consolidated financials and work-in-progress, as well as copies of all notices and correspondence related in any manner to the Bonding Collateral Facility, whether from the bonding company, third parties, or claimants.

(3.) WES will cooperate with WALKER seeking the release of the 415 Parr Circle property from the Bonding Collateral Facility in order to avoid complications with bonding collateral for the Bennie Lane property; if requested by the current bonding company, WALKER will use commercially reasonable efforts to replace the Bennie Lane collateral with other collateral, subject to acceptance from the current bonding company or its successors or assigns.

(4.) If any action is brought against WALKER or any of the WALKER AFFILIATES disputing the release of claims for their benefit in this Agreement, WALKER shall have the unilateral right to cease providing any additional benefit to WES under the Bonding Collateral Facility.

(e.) The lease agreement between WES and GT for the 415 Parr Circle property is hereby amended, as of the Effective Date, to (1) reduce WES's monthly base rent to GT from $16,800.00 to $4,000.00 (but only while WES remains in bankruptcy, and once it emerges from bankruptcy the amount shall be restored to $16,800.00), and (2) acknowledge that if any maintenance or repair obligations of WES are not satisfied in accordance with the existing lease terms, then WALKER may perform such maintenance or make such repairs (or cause the same to be performed or made) and charge WES for same, all such amounts to be due and payable in full no later than thirty (30) days after the date of any invoice, or WES shall be in default/breach of the lease agreement.  Any rent that is past due or due as of the Effective Date on the 415 Parr Circle properly is hereby extinguished and cancelled, provided that the foregoing does not release WES from amounts due for its occupancy of the property from and after the Effective Date.   Finally, the parties acknowledge and agree that WES may, upon ninety (90) days prior written notice to GT, terminate the lease agreement between WES and GT for the 415 Parr Circle property;

(f.) WES will continue to comply with the Nevada State Contractors Board's requirements, so as to keep WALKER's "Qualified Individual" status in good standing; provided, however, that WALKER will not do anything to jeopardize such status;

(g.) WALKER shall remain the "Qualified Individual" for WES's benefit for up to six (6) months from the Effective Date, or for such shorter period of time as may be required by WES to find a replacement for WALKER.   As compensation for such services by WALKER, WES shall compensate WALKER at the rate of $755.48 for each month (or partial month) from and after the Effective Date.

2.    <u>Mutual Releases</u>.  In exchange for the consideration described above, the receipt and sufficiency of which is hereby acknowledged by the parties and each of

them, the parties mutually and finally release and discharge one another as set forth in this Section 2.

      (a.) <u>HOLDINGS, WES, HES, and TS (hereinafter the "WES RELEASING PARTIES")</u>, except for the obligations incurred by the terms and conditions of this Agreement, specifically including the receipt of the $411,289.29 payment from WALKER described in Section 1(a) above, each individually, and on behalf of their respective affiliates, parent or subsidiary entities, acquiring or acquired entities, related entities, administrators, participants, successors and assigns, and each corporation or other form of entity or business association, and all of the directors, officers, stockholders, members, managers, partners, employees, agents, representatives and attorneys of the foregoing, together with all of the successors, assigns, and heirs of all of the foregoing parties or entities, hereby fully, irrevocably, and unconditionally, RELEASE, ACQUIT and DISCHARGE forever each of WALKER (and for purposes of any release of WALKER under this Agreement, such release shall include any and all trusts of which WALKER or a member of WALKER's family is a grantor, trustee and/or beneficiary, including, without limitation, the Walker Family 2006 Trust, dated October 3, 1990, the Walker Irrevocable Trust, dated March 29, 2006, the Walker Family 2001 Life Insurance Trust, dated July 18, 2001, and the Roy A. Walker Irrevocable Life Insurance Trust, dated March 7, 2001) and the WALKER AFFILIATES (and each of them), and their respective affiliates, parent or subsidiary entities, acquiring or acquired entities, related entities, administrators, successors and assigns, and each corporation or other form of entity or business association, and all of the directors, officers, stockholders, members, managers, partners, employees, agents, representatives and attorneys of the foregoing, together with all of the successors, assigns, and heirs of all of the foregoing parties or entities, from any and all amounts due or owed, charges,   complaints, promises, agreements, controversies, obligations, damages, suits, rights, demands, losses, interest, fees, actions, causes of action, claims, claims for relief, judgments, liabilities, fees and expenses (including, without limitation, reasonable attorneys' fees and costs), of whatsoever kind and nature, known or unknown, contingent or not contingent, suspected or unsuspected, whether based on statute, contract, or common law, arising or occurring through and including the Effective Date, and all of the foregoing arising out of or related in any way to the bankruptcy of WES, HOLDINGS, HES, and TS, or the business relationships of WALKER with any of the other parties to this Agreement, the employment of WALKER by WES and the termination of that employment, including, without limitation, any act, failure to act, omission, representation, fact, event, transaction or occurrence. The scope of the claims released hereby is intended to be as broad as allowed under applicable law, and specifically includes, without limitation, all claims of third parties of any nature to the extent such claims may also be asserted by any of the WES RELEASING PARTIES, are derivative of the WES RELEASING PARTIES, or require any of the WES RELEASING PARTIES as a necessary party. For the avoidance of doubt, the parties to this Agreement, specifically the WES RELEASING PARTIES, acknowledge and agree that the releases set forth herein are intended to apply to, and do apply to, any claims that the WES RELEASING PARTIES (or any of them) may have against WALKER and the WALKER AFFILIATES (and each of them) with respect to (i) any and all documents, agreements, instruments, financial statements, financial compilations, financial or business projections, discussions or

descriptions of businesses or business opportunities, valuations, assumptions, models, representations, warranties or covenants related in any manner whatsoever to the ESOP transaction, (ii) the valuation of any entities that were a part of the ESOP transaction (including, without limitation, any data, information, records (financial or otherwise)) provided by WALKER or the WALKER AFFILIATES (or any of them) to any parties to the ESOP transaction or any of the professionals, consultants or advisors that were engaged in connection with the ESOP transaction, (iii) breaches of a fiduciary duty owed to any party (under any legal theory, including, without limitation, corporate law or ERISA), and (iv) any claims based on fraud, intentional misrepresentation, fraud in the inducement, or similar legal theories.    Finally, the releases set forth herein are specifically intended to apply to, and do apply to, any and all restrictive covenants with respect to the civil and construction business previously operated by any of the WES RELEASING PARTIES.  WALKER and the WALKER AFFILIATES shall not compete with the WES RELEASING PARTIES with respect to the utility business thereof and the non-competition covenant and similar covenants related to that line of business shall remain in full force and effect until the earlier to occur of (1) the dismissal (in connection with the cessation of WES's business) or conversion to Chapter 7 status of WES' pending Chapter 11 bankruptcy proceeding, or (2) the fourth (4th) anniversary of the Effective Date.

Each of the WES RELEASING PARTIES that is also a debtor in bankruptcy further covenants and agrees that it shall seek and incorporate into its respective plan of reorganization under the United States Bankruptcy Code as broad a release and bar to any claims against WALKER and the WALKER AFFILIATES as is permissible by law.

(b.)    WALKER, RCE, RCE2, RCE3, DRE, GT, and CSC (hereinafter the "WALKER RELEASING PARTIES"), except for the obligations incurred by the terms and conditions of this Agreement and the payment obligations under the ESOP Notes, the WALKER RELEASING PARTIES each individually, and on behalf of their respective affiliates, parent or subsidiary entities, acquiring or acquired entities, related entities, administrators, participants, successors and assigns, and each corporation or other form of entity or business association, and all of the directors, officers, stockholders, members, managers, partners, employees, agents, representatives and attorneys of the foregoing, together with all of the successors, assigns, and heirs of all of the foregoing parties or entities, hereby fully, irrevocably, and unconditionally, RELEASE, ACQUIT and DISCHARGE forever each of HOLDINGS, WES, HES, and TS individually, and their respective affiliates, parent or subsidiary entities, acquiring or acquired entities, related entities, administrators, successors and assigns, and each corporation or other form of entity or business association, and all of the directors, officers, stockholders, members, managers, partners, employees, agents, representatives and attorneys of the foregoing, together with all of the successors, assigns, and heirs of all of the foregoing parties or entities, from any and all amounts due or owed, charges,   complaints, promises, agreements, controversies, obligations, damages, suits, rights, demands, losses, interest, fees, actions, causes of action, claims, claims for relief, judgments, liabilities, fees and expenses (including, without limitation, reasonable attorneys' fees and costs), of whatsoever kind and nature, known or unknown, contingent or not

contingent, suspected or unsuspected, whether based on statute, contract, or common law, arising or occurring through and including the Effective Date, and all of the foregoing arising out of or related in any way to the bankruptcy of WES, HOLDINGS, HES, and TS, or the business relationships of WALKER with any of the other parties to this Agreement, the employment of WALKER by WES and the termination of that employment, including any act, failure to act, omission, representation, fact, event, transaction or occurrence. The scope of the claims released hereby is intended to be as broad as allowed under applicable law, and specifically includes all claims of third parties of any nature to the extent such claims may also be asserted by any of the WALKER RELEASING PARTIES, are derivative of the WALKER RELEASING PARTIES, or require any of the WALKER RELEASING PARTIES as a necessary party.

Notwithstanding any of the foregoing, no provision of this Agreement shall be construed or interpreted as prohibiting or restricting the ability of WALKER or the WALKER AFFILIATES (or any of them) from bringing any lawsuit, claim or cause of action against any of the following persons (or defending any lawsuit, claim or cause of action brought by any of the following persons against WALKER or the WALKER AFFILIATES (or any of them)): Peter Griffin, Fredric Griffin, Lyle Kibbe, Gary Dayton, and the Estate of Brick Brasher (each of the foregoing being a person that was previously a member of the Board of Directors of WES and/or an officer of WES or other member(s) of the WES GROUP). For purposes of this paragraph, the phrase "WALKER or the WALKER AFFILIATES" shall include any and all trusts of which WALKER or a member of WALKER's family is a grantor, trustee and/or beneficiary, including, without limitation, the Walker Family 2006 Trust, dated October 3, 1990, the Walker Irrevocable Trust, dated March 29, 2006, the Walker Family 2001 Life Insurance Trust, dated July 18, 2001, and the Roy A. Walker Irrevocable Life Insurance Trust, dated March 7, 2001.

3.    <u>No Admission of Liability</u>.  The parties and each of them understand and agree that in making this Agreement, they make no admission of liability to or toward any other party to this Agreement or any released person or entity, which liability is expressly denied in all instances.

4.    <u>No Assignment of Claims</u>.  The parties to this Agreement, and each of them, represent and warrant that they have not assigned, transferred or otherwise conveyed any of their respective claims or purported claims against any other person or entity released hereby to any other person or entity.

5.    <u>WES RELEASING PARTIES Covenant Not to Sue</u>.  The WES RELEASING PARTIES (and each of them) hereby irrevocably covenant to refrain from, directly or indirectly, asserting any claim or demand, or commencing, instituting or causing to be commenced, any proceeding of any kind against any of the WALKER RELEASING PARTIES, based on any matter purported to be released hereby.

6.    <u>WALKER RELEASING PARTIES Covenant Not to Sue</u>.  The WALKER RELEASING PARTIES (and each of them) hereby irrevocably covenant to refrain from, directly or indirectly, asserting any claim or demand, or commencing, instituting or

7

causing to be commenced, any proceeding of any kind against any of the WES RELEASING PARTIES, based on any matter purported to be released hereby.

7.     Intent of Parties.  This Agreement may be pleaded as a full and complete defense to, and the parties hereby consent that it may be used as the basis for an injunction against, any action, suit, or other proceeding based on claims released by this Agreement.

8.     California Civil Code Section 1542 Waiver.  Each party to this Agreement represents and warrants that he, she and/or it, as the case may be, is aware of the provisions of California Civil Code Section 1542, and any other equivalent provision under the laws of any other state or federal jurisdiction, and knowingly and intelligently waive such rights. Section 1542 of the California Civil Code provides as follows:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."**

9.     Waiver of Unknown Claims.  Each party to this Agreement expressly waives all rights under Section 17.245 of the Nevada Revised Statutes, understanding and acknowledging the significance of such specific waiver of Section 17.245, which reads as follows:

> "When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury . ..: (a) It does not discharge any of the other tortfeasors from liability for the injury ... unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater;...."

Each party to this Agreement understands that there may hereafter be a discovery of claims or facts in addition to those currently known or believed to be true, accrued or unaccrued; nevertheless, and for the purpose of implementing a full and complete release and discharge of each and all of the WALKER RELEASING PARTIES on one hand, and each and all of the WES RELEASING PARTIES on the other hand, expressly acknowledges that this Agreement is intended to include and does include in its effect, without limitation, all claims which the WES RELEASING PARTIES (and each of them) and the WALKER RELEASING PARTIES (and each of them) do not know or suspect to exist in his/her/their favor at the time he/she/it signs this Agreement and that this settlement expressly contemplates the extinguishment of all such known or unknown claims against all known and unknown tortfeasors, people, companies or any other legal entity.

10.     Attorney's Fees.  Each party is to bear the entire cost of their own attorney's fees and costs incurred in connection with this Agreement, and it is the intent of WES that that Maupin, Cox & LeGoy shall be paid all fees and costs incurred in obtaining this settlement from the consideration described in Paragraph 1 above.

11.    <u>Further Assurances</u>.  From time to time, upon reasonable request from the other party, each of the parties agree to execute any and all additional documents or to take such additional action as shall be reasonably necessary or appropriate to carry out the transaction contemplated by this Agreement.

12.    <u>Time of the Essence</u>.  Time is of the essence of this Agreement.

13.    <u>Taxes</u>.  Each of the parties understand and agree that each of them alone are responsible for payment of their own federal or state income taxes, Social Security, Medicare tax, or other types of taxes, if any, that may be due or become due as a result of the execution of this Agreement.

14.    <u>Enforcement of Agreement</u>.  If any party or parties to this Agreement should bring any action in law or equity in any court or jurisdiction, to enforce the performance of this Agreement or any of its provisions, or to enjoin any act by the other party or parties in connection with enforcement of this Agreement or related to the subject matter of this Agreement, the prevailing party or parties in such action or proceeding shall be entitled to an award of attorney's fees and costs incurred in such action or proceeding.

15.    <u>Severability</u>.  The unenforceability, invalidity, or illegality of any provision of this Agreement shall not render any other provision unenforceable, invalid, or illegal.

16.    <u>Choice of Law</u>.  This Agreement shall be governed by and interpreted under the laws of the State of Nevada as in force from time to time.

17.    <u>Binding Effect</u>.  This Agreement shall inure to the benefit or detriment of, and be binding upon, the heirs, assigns, transferees, personal representatives, and successors in interest of the parties hereto.

18.    <u>Captions</u>.  The captions in this Agreement shall have no effect upon its interpretation.

19.    <u>Entire Agreement</u>.  This written Agreement represents and contains the entire agreement and understanding between and among the parties in connection with the subject matter of this Agreement.  It may not be varied, altered, or amended except in writing executed by all of the parties affected.

20.    <u>Drafting</u>.  Each party to this Agreement represents that he has read and understood each provision of this Agreement and has discussed this Agreement with legal counsel or has been advised to and has been provided the opportunity to discuss this Agreement with legal counsel.  The parties hereto therefore stipulate and agree that the rule of construction to the effect that any ambiguities are to be or may be resolved against the drafting party shall not be employed in the interpretation of this Agreement to favor any party against another.

9

21.    <u>Execution and Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.  Facsimile signatures or signatures delivered by electronic means are permissible and shall be binding for purposes of this Agreement.

22.    <u>Warranties of Authority</u>.  If any party to this Agreement is not a natural person, the person signing this Agreement on behalf of such entity warrants and represents to all other parties that he, she or it has full power and authority to cause such entity to enter into this Agreement and all power and authority to execute this Agreement on its behalf and to bind such entity to the terms hereof.

23.    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall retain exclusive jurisdiction over the parties hereto in connection with the parties' rights and obligations hereunder and shall have the authority to interpret and enforce the provisions of this Agreement.  The Bankruptcy Court shall also have the authority to sanction a party or a party's attorney if it finds that a party is not acting in good faith in the performance of any of its obligations hereunder.

24.    <u>Conditioned on Bankruptcy Court Approval</u>.  This Agreement and the parties' rights and obligations hereunder are expressly conditioned upon and subject to the Bankruptcy Court's approval of the settlement terms in this Agreement herein pursuant to the provisions of FRCP 9019 after notice to all creditors of the debtor's estate and a hearing.  The parties agree that the motion to approve the settlements contemplated hereby may be heard on a shortened notice to creditors and they all hereby agree to an order shortening time, if necessary.  Additionally, the parties agree that they will fully support the settlement contemplated by this Agreement at the hearing on the motion to approve this Agreement.  Any modification of the terms of this Agreement must be expressly agreed upon by all parties to this Agreement and approved by the Bankruptcy Court.

[Signature Pages Follow]

10

IN WITNESS WHEREOF, the parties have executed this Agreement and caused the same to be duly delivered on their behalf on the day and year herein above first set forth.

RIVER CANYON ENTERPRISES, LLC, a Nevada limited liability company

GREEN TEA, LLC, a Nevada limited liability company

By: _____

By: _____

Its: _____

Its: _____

RIVER CANYON ENTERPRISES 2, LLC, a Nevada limited liability company

COMMERCIAL SNOW CLEARING, a Nevada limited liability company

By: _____

By: _____

Its: _____

Its: _____

RIVER CANYON ENTERPRISES 3, LLC, a Nevada limited liability company

W.E.S. TRUCKING, INC., a Nevada corporation

By: _____

By: _____

Its: _____

Its: _____

DOUBLE R EQUIPMENT, A NEVADA CORPORATION

WES HOLDINGS, INC., a Nevada corporation

By: _____

By: _____

Its: _____

Its: _____

_____
Roy A. Walker, an individual

11

WES CONSTRUCTION COMPANY, Inc., a Nevada corporation

By: _____

Its: _____


HEAVY EQUIPMENT SERVICES, LLC, a Nevada limited liability company

By: _____

Its: _____

TRUCKING SERVICES, LLC, a Nevada limited liability company

By: _____

Its: _____

Schedule A

## ALLOCATION OF SETTLEMENT PROCEEDS

| Amount | Transaction |
|---|---|
| $302,500 (paid 12/24/08) | Reversal of payment from WES to RCE for aggregate |
| $97,500 (paid 12/24/08) | Reversal of payment from WES to W.R.E. Management Group for services related to mining of aggregate |
| $92,568 | Reversal of payment from WTI inadvertently made to RCE instead of WES |
| $137,194 | Reversal of cancellation of Walker subordinated note held by WES (in amount of difference in off-setting notes by and between WES and Walker) |
| $156,228 | Reversal of payment from WES to WTI for fuel surcharge |
| $39,010 | Reversal of payments for purchase price of WTI/CSC paid by WES to Walker (reflects adjustment in purchase price from $522,953 to $408,943) |

Total: $825,000

13

To: Aaron Fricke

From: Maron Smith

Re: WES.

3 pgs.
7/28
1:46 pm.

IN WITNESS WHEREOF, the parties have executed this Agreement and caused the same to be duly delivered on their behalf on the day and year herein above first set forth.

RIVER CANYON ENTERPRISES, LLC, a Nevada limited liability company

By: _____

Its: _____


GREEN TEA, LLC, a Nevada limited liability company

By: _____

Its: _____


RIVER CANYON ENTERPRISES 2, LLC, a Nevada limited liability company

By: _____

Its: _____


COMMERCIAL SNOW CLEARING, a Nevada limited liability company

By: _____

Its: _____


RIVER CANYON ENTERPRISES 3, LLC, a Nevada limited liability company

By: _____

Its: _____


W.E.S. TRUCKING, INC., a Nevada corporation

By: _____

Its: _____


DOUBLE R EQUIPMENT, A NEVADA CORPORATION

By: _____

Its: _____


WES HOLDINGS, INC., a Nevada corporation

By: _____

Its: _____


_____
Roy A. Walker, an individual

11

WES CONSTRUCTION COMPANY,
Inc., a Nevada corporation

By: _____

Its: _____

HEAVY EQUIPMENT SERVICES, LLC,
a Nevada limited liability company

By: _____

Its: _____

TRUCKING SERVICES, LLC, a Nevada
limited liability company

By: _____

Its: _____

Exhibit "B"

**Peggy Turk**

| | |
|---|---|
| **From:** | Cossitt, Bill (USTP) [Bill.Cossitt@usdoj.gov] |
| **Sent:** | Wednesday, July 29, 2009 3:50 PM |
| **To:** | Peggy Turk; 'BBEESLEY'; tlukas@hollandhart.com; africke@mclrenolaw.com |
| **Cc:** | 'Mike Brandt' |
| **Subject:** | RE: WES - Proposed Order Approving Settlement |
| **Attachments:** | image001.jpg |

Dear All:

I request the following changes to the draft Order:

1) Paragraph one of the Order should state that the Settlement Agreement is approved: "as amended and limited herein and in open Court on July 29, 2009, including, without limitation:
    A. deletion of the payment of $13,710.71 in pre-petition credit cards in paragraph 1.(a.);
    B. deletion of any joint check requirement to Maupin, Cox & LeGoy and deposit into its trust account in paragraph 1.(a);
    C. deletion of the clause "(subject to allowed administrative attorneys' fees for debtor)" in paragraph 1.(b.); and
    D. deletion from paragraph 10 the following language: "and it is the intent of WES that that Maupin, Cox & LeGoy shall be paid all fees and costs incurred in obtaining this settlement from the consideration described in Paragraph 1 above."

2) Paragraph two should require the remaining proceeds be kept in a Debtor DIP account or a "joint trust account" that is bonded (11 U.S.C. Sec. 345) requiring two signatures from the parties claiming the proceeds: the Debtor and the secured Creditor. It would make sense to me to put the proceeds into the same account as the proceeds from the equipment sale and maybe have it be an interest bearing account.

Bill Cossitt
784-5335, ext. 106

---

**From:** Peggy Turk [mailto:turk@asmithlaw.com]
**Sent:** Wednesday, July 29, 2009 2:55 PM
**To:** 'BBEESLEY'; Cossitt, Bill (USTP); tlukas@hollandhart.com; africke@mclrenolaw.com
**Cc:** 'Mike Brandt'
**Subject:** WES - Proposed Order Approving Settlement

Gentlemen: Pursuant to LR 9021, attached is the proposed Order Re: Motion For Order Approving Settlement Agreement And To Make Certain Distributions. Please provide me with your signatures as soon as possible, or your suggested revisions.

Peggy Turk

Peggy L. Turk, Paralegal
LAW OFFICES OF ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

(775) 786-3066 (facsimile)
turk@asmithlaw.com

*The information contained in this Email is information protected by the attorney-client and/or the attorney work product privilege. It is intended only for the use of the individual(s) named above and the privileges are not waived by virtue of this message having been sent via electronic mail. If the person actually receiving this Email or any other reader of the Email is not the named recipient or the employee or agent of the named recipient, any use, dissemination, distribution or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or Email and destroy all versions of this Email. Thank you.*

**Peggy Turk**

| | |
|---|---|
| **From:** | Cossitt, Bill  (USTP) [Bill.Cossitt@usdoj.gov] |
| **Sent:** | Wednesday, July 29, 2009 5:24 PM |
| **To:** | Peggy Turk; 'BBEESLEY'; tlukas@hollandhart.com; africke@mclrenolaw.com; 'Macauley, Laury' |
| **Cc:** | 'Mike Brandt'; 'Maples, Roxanne' |
| **Subject:** | RE: WES - Proposed Order Approving Settlement |
| **Attachments:** | image001.jpg |

Dear All:

I do NOT agree to the new draft Order.

1) If Maupin, Cox & LeGoy has possession of the proceeds, after having given notice of its attorney's lien, (valid or not), it can argue that it has perfected its claimed security interest in the Debtor's cash.  It is my understanding of the representations made to the Court by Mr. Fricke and Mr. Smith that they agreed to hold all employment and payment rights in abeyance, thereby removing them from the Settlement Agreement.

2)  The proceeds should be in a DIP account or a bonded  trust account pursuant to 11 U.S.C. Sec. 345.

Bill Cossitt

---

**From:** Peggy Turk [mailto:turk@asmithlaw.com]
**Sent:** Wednesday, July 29, 2009 5:11 PM
**To:** Cossitt, Bill (USTP); 'BBEESLEY'; tlukas@hollandhart.com; africke@mclrenolaw.com; 'Macauley, Laury'
**Cc:** 'Mike Brandt'; 'Maples, Roxanne'
**Subject:** RE: WES - Proposed Order Approving Settlement

Attached is the newly revised Order which covers most of the changes, except for matters not raised at the hearing.  Alan intends to schedule an emergency telephone conference with the Judge if we are unable to agree to the language.  Please let me know immediately if the order is acceptable.

---

**From:** Cossitt, Bill (USTP) [mailto:Bill.Cossitt@usdoj.gov]
**Sent:** Wednesday, July 29, 2009 3:50 PM
**To:** Peggy Turk; 'BBEESLEY'; tlukas@hollandhart.com; africke@mclrenolaw.com
**Cc:** 'Mike Brandt'
**Subject:** RE: WES - Proposed Order Approving Settlement

Dear All:

I request the following changes to the draft Order:

1)  Paragraph one of the Order should state that the Settlement Agreement is approved: "as amended and limited herein and in open Court on July 29, 2009, including, without limitation:
    A.  deletion of the payment of $13,710.71 in pre-petition credit cards in paragraph 1.(a.);
    B.  deletion of any joint check requirement to Maupin, Cox & LeGoy and deposit into its trust account in paragraph 1.(a)
    C.  deletion of the clause "(subject to allowed  administrative attorneys' fees for debtor)" in paragraph 1.(b.); and

1

D.  deletion from paragraph 10 the following language: "and it is the intent of WES that that Maupin, Cox & LeGoy shall be paid all fees and costs incurred in obtaining this settlement from the consideration described in Paragraph 1 above."

2) Paragraph two should require the remaining proceeds be kept in a Debtor DIP account or a "joint trust account" that is bonded (11 U.S.C. Sec. 345) requiring two signatures from the parties claiming the proceeds: the Debtor and the secured Creditor.  It would make sense to me to put the proceeds into the same account as the proceeds from the equipment sale and maybe have it be an interest bearing account.

Bill Cossitt
784-5335, ext. 106

---

**From:** Peggy Turk [mailto:turk@asmithlaw.com]
**Sent:** Wednesday, July 29, 2009 2:55 PM
**To:** 'BBEESLEY'; Cossitt, Bill (USTP); tlukas@hollandhart.com; africke@mclrenolaw.com
**Cc:** 'Mike Brandt'
**Subject:** WES - Proposed Order Approving Settlement

Gentlemen:  Pursuant to LR 9021, attached is the proposed Order Re: Motion For Order Approving Settlement Agreement And To Make Certain Distributions.   Please provide me with your signatures as soon as possible, or your suggested revisions.

Peggy Turk

Peggy L. Turk, Paralegal
LAW OFFICES OF ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579
(775) 786-3066 (facsimile)
turk@asmithlaw.com

*The information contained in this Email is information protected by the attorney-client and/or the attorney work product privilege.  It is intended only for the use of the individual(s) named above and the privileges are not waived by virtue of this message having been sent via electronic mail.  If the person actually receiving this Email or any other reader of the Email is not the named recipient or the employee or agent of the named recipient, any use, dissemination, distribution or copying of the communication is strictly prohibited.  If you have received this communication in error, please immediately notify the sender by telephone or Email and destroy all versions of this Email.  Thank you.*

Exhibit "C"

**Peggy Turk**

| | |
|---|---|
| **From:** | Fricke, Aaron [africke@mclrenolaw.com] |
| **Sent:** | Wednesday, July 29, 2009 4:43 PM |
| **To:** | Cossitt, Bill  (USTP); Peggy Turk; BBEESLEY; tlukas@hollandhart.com |
| **Cc:** | Mike Brandt |
| **Subject:** | RE: WES - Proposed Order Approving Settlement |
| **Attachments:** | image001.jpg |

Dear All:

In accord with Judge Zive's rulings from the bench, the draft order should state that the Settlement Agreement is approved as amended and limited herein and in open Court on July 29, 2009, including, without limitation 1(A) deletion of the payment of $13,710.71 in pre-petition credit cards in paragraph 1.(a.).  The judge clearly made this ruling.

HOWEVER, Judge Zive said nothing and made no ruling whatsoever about the attorney's fees provisions in the agreement, and was not asked to.  In fact, these provisions were not mentioned at all by Mr. Cossitt in the hearing either yesterday or today, and I am certain the transcript will reflect that.   WES does not consent to such an attempted unilateral and unsupported amendment of the agreement between WES and Mr. Walker, and I believe it is wholly improper for Mr. Cossitt to attempt to rewrite this agreement, already approved as specifically amended by the Court, and threatening to slow down distribution of these funds that WES obviously needs now, which is why the Judge approved the order in the first place.

*Aaron Bart Fricke, Esq.*

Maupin, Cox & LeGoy

4785 Caughlin Parkway

Reno, Nevada 89519

(775)827-2000

(775)827-2185 (facsimile)

Legal Assistant:  Doris A. Dotson

**CONFIDENTIALITY ---** This message is intended to be confidential and directed only to the person or entity to whom it is addressed above.  Furthermore, the contents of this message and any attachments hereto may be subject to the attorney-client privilege and/or work product doctrine and should not be disclosed to other parties, distributed, or copied in any way.  If you have received this message by error, please reply by email to inform us and delete any copies from your hard drive.  Thank you.

**IRS Circular 230 Disclaimer**: To ensure compliance with IRS Circular 230, any U.S. federal tax advice provided in this communication is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer (i) for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or (ii) in promoting, marketing or recommending to another party a partnership or other entity, investment plan, arrangement or other transaction addressed herein.

---

**From:** Cossitt, Bill (USTP) [mailto:Bill.Cossitt@usdoj.gov]
**Sent:** Wednesday, July 29, 2009 3:50 PM
**To:** Peggy Turk; 'BBEESLEY'; tlukas@hollandhart.com; Fricke, Aaron
**Cc:** 'Mike Brandt'
**Subject:** RE: WES - Proposed Order Approving Settlement

Dear All:

I request the following changes to the draft Order:

1) Paragraph one of the Order should state that the Settlement Agreement is approved: "as amended and limited herein and in open Court on July 29, 2009, including, without limitation:
　　A.  deletion of the payment of $13,710.71 in pre-petition credit cards in paragraph 1.(a.);
　　B.  deletion of any joint check requirement to Maupin, Cox & LeGoy and deposit into its trust account in paragraph 1.(a);
　　C.  deletion of the clause "(subject to allowed administrative attorneys' fees for debtor)" in paragraph 1.(b.); and
　　D.  deletion from paragraph 10 the following language: "and it is the intent of WES that that Maupin, Cox & LeGoy shall be paid all fees and costs incurred in obtaining this settlement from the consideration described in Paragraph 1 above."

2) Paragraph two should require the remaining proceeds be kept in a Debtor DIP account or a "joint trust account" that is bonded (11 U.S.C. Sec. 345) requiring two signatures from the parties claiming the proceeds: the Debtor and the secured Creditor.  It would make sense to me to put the proceeds into the same account as the proceeds from the equipment sale and maybe have it be an interest bearing account.

Bill Cossitt
784-5335, ext. 106

---

**From:** Peggy Turk [mailto:turk@asmithlaw.com]
**Sent:** Wednesday, July 29, 2009 2:55 PM
**To:** 'BBEESLEY'; Cossitt, Bill (USTP); tlukas@hollandhart.com; africke@mclrenolaw.com
**Cc:** 'Mike Brandt'
**Subject:** WES - Proposed Order Approving Settlement

Gentlemen:  Pursuant to LR 9021, attached is the proposed Order Re: Motion For Order Approving Settlement Agreement And To Make Certain Distributions.   Please provide me with your signatures as soon as possible, or your suggested revisions.

Peggy Turk

Peggy L. Turk, Paralegal

LAW OFFICES OF ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579
(775) 786-3066 (facsimile)
turk@asmithlaw.com

*The information contained in this Email is information protected by the attorney-client and/or the attorney work product privilege.  It is intended only for the use of the individual(s) named above and the privileges are not waived by virtue of this message having been sent via electronic mail.  If the person actually receiving this Email or any other reader of the Email is not the named recipient or the employee or agent of the named recipient, any use, dissemination, distribution or copying of the communication is strictly prohibited.  If you have received this communication in error, please immediately notify the sender by telephone or Email and destroy all versions of this Email.  Thank you.*

**Peggy Turk**

| | |
|---|---|
| **From:** | Fricke, Aaron [africke@mclrenolaw.com] |
| **Sent:** | Wednesday, July 29, 2009 5:24 PM |
| **To:** | Timothy A. Lukas; Peggy Turk; Cossitt, Bill (USTP); BBEESLEY; Macauley, Laury |
| **Cc:** | Mike Brandt; Maples, Roxanne |
| **Subject:** | RE: WES - Proposed Order Approving Settlement |
| **Attachments:** | image001.jpg |

I approve. Thanks Peggy.


*Aaron Bart Fricke, Esq.*

Maupin, Cox & LeGoy

4785 Caughlin Parkway

Reno, Nevada 89519

(775)827-2000

(775)827-2185 (facsimile)

Legal Assistant:  Doris A. Dotson


**CONFIDENTIALITY ---** This message is intended to be confidential and directed only to the person or entity to whom it is addressed above.  Furthermore, the contents of this message and any attachments hereto may be subject to the attorney-client privilege and/or work product doctrine and should not be disclosed to other parties, distributed, or copied in any way.  If you have received this message by error, please reply by email to inform us and delete any copies from your hard drive.  Thank you.


**IRS Circular 230 Disclaimer**: To ensure compliance with IRS Circular 230, any U.S. federal tax advice provided in this communication is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer (i) for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or (ii) in promoting, marketing or recommending to another party a partnership or other entity, investment plan, arrangement or other transaction addressed herein.


**From:** Timothy A. Lukas [mailto:TLukas@hollandhart.com]
**Sent:** Wednesday, July 29, 2009 5:23 PM
**To:** 'Peggy Turk'; 'Cossitt, Bill (USTP)'; 'BBEESLEY'; Fricke, Aaron; 'Macauley, Laury'
**Cc:** 'Mike Brandt'; 'Maples, Roxanne'
**Subject:** RE: WES - Proposed Order Approving Settlement

I approve.  Good work Peggy.

1

**From:** Peggy Turk [mailto:turk@asmithlaw.com]
**Sent:** Wednesday, July 29, 2009 5:11 PM
**To:** 'Cossitt, Bill (USTP)'; 'BBEESLEY'; Timothy A. Lukas; africke@mclrenolaw.com; 'Macauley, Laury'
**Cc:** 'Mike Brandt'; 'Maples, Roxanne'
**Subject:** RE: WES - Proposed Order Approving Settlement

Attached is the newly revised Order which covers most of the changes, except for matters not raised at the hearing.  Alan intends to schedule an emergency telephone conference with the Judge if we are unable to agree to the language.  Please let me know immediately if the order is acceptable.

---

**From:** Cossitt, Bill (USTP) [mailto:Bill.Cossitt@usdoj.gov]
**Sent:** Wednesday, July 29, 2009 3:50 PM
**To:** Peggy Turk; 'BBEESLEY'; tlukas@hollandhart.com; africke@mclrenolaw.com
**Cc:** 'Mike Brandt'
**Subject:** RE: WES - Proposed Order Approving Settlement

Dear All:

I request the following changes to the draft Order:

1) Paragraph one of the Order should state that the Settlement Agreement is approved: "as amended and limited herein and in open Court on July 29, 2009, including, without limitation:
    A. deletion of the payment of $13,710.71 in pre-petition credit cards in paragraph 1.(a.);
    B. deletion of any joint check requirement to Maupin, Cox & LeGoy and deposit into its trust account in paragraph 1.(a);
    C. deletion of the clause "(subject to allowed administrative attorneys' fees for debtor)" in paragraph 1.(b.); and
    D. deletion from paragraph 10 the following language: "and it is the intent of WES that that Maupin, Cox & LeGoy shall be paid all fees and costs incurred in obtaining this settlement from the consideration described in Paragraph 1 above."

2) Paragraph two should require the remaining proceeds be kept in a Debtor DIP account or a "joint trust account" that is bonded (11 U.S.C. Sec. 345) requiring two signatures from the parties claiming the proceeds: the Debtor and the secured Creditor.  It would make sense to me to put the proceeds into the same account as the proceeds from the equipment sale and maybe have it be an interest bearing account.

Bill Cossitt
784-5335, ext. 106

---

**From:** Peggy Turk [mailto:turk@asmithlaw.com]
**Sent:** Wednesday, July 29, 2009 2:55 PM
**To:** 'BBEESLEY'; Cossitt, Bill (USTP); tlukas@hollandhart.com; africke@mclrenolaw.com
**Cc:** 'Mike Brandt'
**Subject:** WES - Proposed Order Approving Settlement

Gentlemen:  Pursuant to LR 9021, attached is the proposed Order Re: Motion For Order Approving Settlement Agreement And To Make Certain Distributions.   Please provide me with your signatures as soon as possible, or your suggested revisions.

Peggy Turk

Peggy L. Turk, Paralegal
LAW OFFICES OF ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579
(775) 786-3066 (facsimile)
turk@asmithlaw.com

*The information contained in this Email is information protected by the attorney-client and/or the attorney work product privilege.  It is intended only for the use of the individual(s) named above and the privileges are not waived by virtue of this message having been sent via electronic mail.  If the person actually receiving this Email or any other reader of the Email is not the named recipient or the employee or agent of the named recipient, any use, dissemination, distribution or copying of the communication is strictly prohibited.  If you have received this communication in error, please immediately notify the sender by telephone or Email and destroy all versions of this Email.  Thank you.*

## Peggy Turk

| | |
|---|---|
| **From:** | Fricke, Aaron [africke@mclrenolaw.com] |
| **Sent:** | Wednesday, July 29, 2009 5:39 PM |
| **To:** | Cossitt, Bill  (USTP); Peggy Turk; BBEESLEY; tlukas@hollandhart.com; Macauley, Laury |
| **Cc:** | Mike Brandt; Maples, Roxanne |
| **Subject:** | RE: WES - Proposed Order Approving Settlement |
| **Attachments:** | image001.jpg |

Dear All;

With due respect to Mr. Cossitt, the proposed order and the approved Settlement Agreement, as specifically amended and approved by the Court, clearly indicate that "The Debtor shall not pay professional fees to its attorneys pending future application and order of the Court" See Proposed Order, Paragraph 4.   The settlement proceeds, less the $100k distributed to WES for its immediate use, will be held in our firm's bonded client trust account awaiting court approval of ALL further distributions, whether to WES, or the Bank, or for payment of attorney's fees, or to whomever or for whatever purpose that the court directs.  Whether or not our firm has "perfected our lien" is presently of no concern to the U.S. Trustee, and regardless, our representation and fees must be approved by the court before we do anything anyway. Those issues are to be decided on August 17.

And the U.S. Trustee has no prerogative whatsoever to object to what is and has always been the express intention of WES, that is "and it is the intent of WES that that Maupin, Cox & LeGoy shall be paid all fees and costs incurred in obtaining this settlement from the consideration described in Paragraph 1 above."  Obviously, the U.S. Trustee has no standing to dictate what the intentions of WES are.

Regardless, all our fees are subject to Court approval, and the effectiveness of our lien under NRS 18 is subject to the court's approval also, and nothing in the agreement or proposed order changes that fact.


*Aaron Bart Fricke, Esq.*

Maupin, Cox & LeGoy

4785 Caughlin Parkway

Reno, Nevada 89519

(775)827-2000

(775)827-2185 (facsimile)

Legal Assistant:  Doris A. Dotson


**CONFIDENTIALITY** --- This message is intended to be confidential and directed only to the person or entity to whom it is addressed above.  Furthermore, the contents of this message and any attachments hereto may be subject to the attorney-client privilege and/or work product doctrine and should not be disclosed to other parties, distributed, or copied in any way.  If you have received this message by error, please reply by email to inform us and delete any copies from your hard drive.  Thank you.

**IRS Circular 230 Disclaimer**: To ensure compliance with IRS Circular 230, any U.S. federal tax advice provided in this communication is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer (i) for the purpose of avoiding tax penalties that may be imposed on the recipient or any other taxpayer, or (ii) in promoting, marketing or recommending to another party a partnership or other entity, investment plan, arrangement or other transaction addressed herein.

---

**From:** Cossitt, Bill (USTP) [mailto:Bill.Cossitt@usdoj.gov]
**Sent:** Wednesday, July 29, 2009 5:24 PM
**To:** Peggy Turk; 'BBEESLEY'; tlukas@hollandhart.com; Fricke, Aaron; 'Macauley, Laury'
**Cc:** 'Mike Brandt'; 'Maples, Roxanne'
**Subject:** RE: WES - Proposed Order Approving Settlement

Dear All:

I do NOT agree to the new draft Order.

1) If Maupin, Cox & LeGoy has possession of the proceeds, after having given notice of its attorney's lien, (valid or not), it can argue that it has perfected its claimed security interest in the Debtor's cash.  It is my understanding of the representations made to the Court by Mr. Fricke and Mr. Smith that they agreed to hold all employment and payment rights in abeyance, thereby removing them from the Settlement Agreement.

2) The proceeds should be in a DIP account or a bonded  trust account pursuant to 11 U.S.C. Sec. 345.

Bill Cossitt

---

**From:** Peggy Turk [mailto:turk@asmithlaw.com]
**Sent:** Wednesday, July 29, 2009 5:11 PM
**To:** Cossitt, Bill (USTP); 'BBEESLEY'; tlukas@hollandhart.com; africke@mclrenolaw.com; 'Macauley, Laury'
**Cc:** 'Mike Brandt'; 'Maples, Roxanne'
**Subject:** RE: WES - Proposed Order Approving Settlement

Attached is the newly revised Order which covers most of the changes, except for matters not raised at the hearing.  Alan intends to schedule an emergency telephone conference with the Judge if we are unable to agree to the language.  Please let me know immediately if the order is acceptable.

---

**From:** Cossitt, Bill (USTP) [mailto:Bill.Cossitt@usdoj.gov]
**Sent:** Wednesday, July 29, 2009 3:50 PM
**To:** Peggy Turk; 'BBEESLEY'; tlukas@hollandhart.com; africke@mclrenolaw.com
**Cc:** 'Mike Brandt'
**Subject:** RE: WES - Proposed Order Approving Settlement

Dear All:

I request the following changes to the draft Order:

1) Paragraph one of the Order should state that the Settlement Agreement is approved: "as amended and limited herein and in open Court on July 29, 2009, including, without limitation:
   A. deletion of the payment of $13,710.71 in pre-petition credit cards in paragraph 1.(a.);

B. deletion of any joint check requirement to Maupin, Cox & LeGoy and deposit into its trust account in paragraph 1.(a);

C. deletion of the clause "(subject to allowed  administrative attorneys' fees for debtor)" in paragraph 1.(b.); and

D. deletion from paragraph 10 the following language: "and it is the intent of WES that that Maupin, Cox & LeGoy shall be paid all fees and costs incurred in obtaining this settlement from the consideration described in Paragraph 1 above."

2) Paragraph two should require the remaining proceeds be kept in a Debtor DIP account or a "joint trust account" that is bonded (11 U.S.C. Sec. 345) requiring two signatures from the parties claiming the proceeds: the Debtor and the secured Creditor.  It would make sense to me to put the proceeds into the same account as the proceeds from the equipment sale and maybe have it be an interest bearing account.

Bill Cossitt
784-5335, ext. 106

---

**From:** Peggy Turk [mailto:turk@asmithlaw.com]
**Sent:** Wednesday, July 29, 2009 2:55 PM
**To:** 'BBEESLEY'; Cossitt, Bill (USTP); tlukas@hollandhart.com; africke@mclrenolaw.com
**Cc:** 'Mike Brandt'
**Subject:** WES - Proposed Order Approving Settlement

Gentlemen:  Pursuant to LR 9021, attached is the proposed Order Re: Motion For Order Approving Settlement Agreement And To Make Certain Distributions.   Please provide me with your signatures as soon as possible, or your suggested revisions.

Peggy Turk

Peggy L. Turk, Paralegal
LAW OFFICES OF ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579
(775) 786-3066 (facsimile)
turk@asmithlaw.com

*The information contained in this Email is information protected by the attorney-client and/or the attorney work product privilege.  It is intended only for the use of the individual(s) named above and the privileges are not waived by virtue of this message having been sent via electronic mail.  If the person actually receiving this Email or any other reader of the Email is not the named recipient or the employee or agent of the named recipient, any use, dissemination, distribution or copying of the communication is strictly prohibited.  If you have received this communication in error, please immediately notify the sender by telephone or Email and destroy all versions of this Email.  Thank you.*