# EXHIBIT E

## AGREEMENT

THIS AGREEMENT (the "**Agreement**") is made and entered into on _____, 2009, but shall be effective for all purposes as of September 1, 2009 (the "**Effective Date**"), by and between DELMAR CONSTRUCTION, a Nevada corporation ("**Delmar**") and WES CONSTRUCTION COMPANY, INC., a Nevada corporation ("**WES**").

### BACKGROUND INFORMATION:

A.      WES is engaged, and has been engaged, in the business of a general contractor since May of 1976, and as part of its business has provided construction-related services to certain utility providers such as NV Energy and AT&T.

B.      WES filed for bankruptcy protection on July 6, 2009. Since filing for bankruptcy protection, WES has had difficulty attracting and keeping work with its customers and clients, including certain of its utility customers.

C.      On August 31, 2009, the Board of Directors of WES determined that it was in the company's best interests to (i) begin winding down its operations, (ii) cease bidding on or accepting new work, and (iii) terminate the majority of its remaining employees.

D.      WES has certain contracts with utility customers that it can longer perform due to its financial condition. Delmar is capable and desirous of completing the work needed by the utility customers of WES, and WES is desirous of such work being undertaken by Delmar, on the terms and conditions set forth in this Agreement.

E.      WES is a party to that certain Settlement Agreement and Mutual Release of All Claims dated July 28, 2009, by and between ROY A. WALKER, an individual, RIVER CANYON ENTERPRISES, LLC, a Nevada limited liability company, RIVER CANYON ENTERPRISES 2, LLC, a Nevada limited liability company, RIVER CANYON ENTERPRISES 3, LLC, a Nevada limited liability company, DOUBLE R EQUIPMENT, a Nevada corporation, GREEN TEA, LLC, a Nevada limited liability company, and COMMERCIAL SNOW CLEARING, LLC, a Nevada limited liability company, on one hand, and W.E.S. TRUCKING, INC., a Nevada corporation, WES HOLDINGS, INC., a Nevada corporation, WES CONSTRUCTION COMPANY, INC., a Nevada corporation, HEAVY EQUIPMENT SERVICES, LLC ("HES"), a Nevada limited liability company, TRUCKING SERVICES, LLC ("TS"), a Nevada limited liability company, on the other hand (the "**Settlement Agreement**"). Section 2(a) of the Settlement Agreement provides that "WALKER" and the "WALKER AFFILIATES" shall not compete with the "WES RELEASING PARTIES" (as such capitalized terms are defined in the Settlement Agreement) with respect to the utility business thereof and the non-competition covenant and similar covenants related to the utility business shall remain in full force and effect until the earlier to occur of (1) the dismissal (in connection with the cessation of WES's business) or conversion to Chapter 7 status of WES' pending Chapter 11 bankruptcy proceeding, or (2) the fourth (4th) anniversary of the effective date of the Settlement Agreement (such language in the Settlement Agreement, the "**Utility Business Restrictive Covenants**"). The parties acknowledge and agree that in order to consummate their intent with respect to this Agreement, that "WALKER" and the "WALKER

AFFILIATES" (as such capitalized terms are defined in the Settlement Agreement), and Delmar, need to be released from the Utility Business Restrictive Covenants as of the Effective Date.

NOW, THEREFORE, in consideration of the mutual covenants, promises and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      Preservation of Utility Business; Debtor-In-Possession Funding. The parties wish to cooperate with one another to preserve value for WES by allowing the utility work to be performed by Delmar during an interim period (anticipated to be 30 days or less) on a business as usual basis. Delmar and WES will establish a new bank account and all funding requirements for utility work during the interim period will be paid with funds from this account, which will in turn be funded by Delmar. Delmar will review, approve and pay all invoices and amounts due for utility work through this new account. In return for this debtor-in-possession funding mechanism, WES will assign all accounts receivable for such work to Delmar, and Delmar will receive a security interest in such accounts receivable from the bankruptcy court. Delmar and WES will mutually agree on the costs associated with performing such work, which will be reimbursed 100% to Delmar by WES, and to the extent there is profit on such work WES and Delmar agree to split such profits (on an aggregate basis in accordance with U.S. generally accepted accounting principles and, as appropriate, ratios as agreed upon among the parties) as follows: ~~fifty~~ninety percent (~~50~~90%) to WES, and ~~fifty~~ten percent (~~50~~10%) to Delmar.

2.      Representations and Warranties of Delmar. As a material inducement to WES entering into this Agreement and to consummate the transactions contemplated hereby, Delmar hereby makes the following representations and warranties to WES:

(a)      Corporate Status. Delmar is a corporation validly existing and in good standing under the laws of the State of Nevada.

(b)      Power and Authority. Delmar has the power and authority to execute and deliver this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby. Delmar has taken all action necessary to authorize the execution and delivery of this Agreement, the performance of its obligations hereunder and the consummation of the transactions contemplated hereby.

(c)      Enforceability. This Agreement has been duly executed and delivered by the Delmar and constitutes a legal, valid and binding obligation of Delmar, enforceable against Delmar in accordance with its terms, except as the same may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and general equitable principles regardless of whether such enforceability is considered in a proceeding at law or in equity.

(d)      No Commissions. Delmar has not incurred any obligation for any finder's or broker's or agent's fees or commissions or similar compensation in connection with the transactions contemplated hereby.

3. <u>Representations and Warranties of WES</u>. As a material inducement to Delmar to enter into this Agreement and to consummate the transactions contemplated hereby, WES hereby makes the following representations and warranties to Delmar:

(a) <u>Corporate Status</u>. WES is a corporation validly existing and in good standing under the laws of the State of Nevada.

(b) <u>Power and Authority</u>. WES has the authority to execute and deliver this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby. WES has taken all action necessary to authorize the execution and delivery of this Agreement, the performance of its obligations hereunder, and the consummation of the transactions contemplated hereby.

(c) <u>Enforceability</u>. This Agreement has been duly executed and delivered by WES and constitutes the legal, valid and binding obligations of WES, enforceable against WES in accordance with its terms, except as the same may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and general equitable principles regardless of whether such enforceability is considered in a proceeding at law or in equity.

(e) <u>No Commissions</u>. WES has not incurred any obligation for any finder's or broker's or agent's fees or commissions or similar compensation in connection with the transactions contemplated hereby.

4. <u>Miscellaneous Provisions</u>.

(a) <u>Bankruptcy Court Approval Required</u>. The transactions contemplated by this Agreement require, as a condition precedent, approval of this Agreement by the United States Bankruptcy Court for the District of Nevada (Case No. BK-N-09-52177-GWZ (Lead)).

(b) <u>Binding Effect; Benefits</u>. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, successors, executors, administrators and assigns. Notwithstanding anything in this Agreement to the contrary, nothing in this Agreement, expressed or implied, is intended to confer on any person other than the parties hereto or their respective heirs, successors, executors, administrators and assigns any rights, remedies, obligations or liabilities under or by reason of this Agreement.

(c) <u>Entire Agreement</u>. This Agreement, together with the exhibits and schedules, if any, and other documents contemplated hereby or incorporated herein by reference, constitutes the final written expression of all of the agreements between the parties, and is a complete and exclusive statement of the terms thereof. It supersedes all prior and contemporaneous agreements, representations and understandings of the parties. The parties specifically represent, each to the other, that there are no additional or supplemental agreements between them related in any way to the matters contained herein unless specifically included or referred to herein.

(d) <u>Governing Law</u>. This Agreement, and all questions relating to its validity, interpretation, performance and enforcement (including, without limitation, provisions

concerning limitations of action), shall be governed by and construed in accordance with the laws of the State of Nevada (exclusive of the conflict of laws provisions thereof) applicable to agreements made and to be performed entirely within such state.

(e)     Counterparts; Delivery of Signatures.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement may be executed and delivered by facsimile or electronic means.

(f)     Headings.     The headings in this Agreement are intended solely for convenience of reference and shall be given no effect in the construction or interpretation of this Agreement.

(g)     Modification and Waivers.  No amendment, waiver of compliance with any provision or condition hereof, or consent pursuant to this Agreement shall be effective unless evidenced by an instrument in writing signed by the parties.

(h)     Severability.    If for any reason whatsoever, any one or more of the provisions of this Agreement shall be held or deemed to be illegal, inoperative, unenforceable or invalid as applied to any particular case or in all cases, such circumstances shall not have the effect of rendering such provision illegal, inoperative, unenforceable or invalid in any other case or of rendering any of the other provisions of this Agreement illegal, inoperative, unenforceable or invalid.

(i)     Drafting.  Each party to this Agreement represents that he has read and understood each provision of this Agreement and has discussed this Agreement with legal counsel or has been advised to and has been provided the opportunity to discuss this Agreement with legal counsel. The parties hereto therefore stipulate and agree that the rule of construction to the effect that any ambiguities are to be or may be resolved against the drafting party shall not be employed in the interpretation of this Agreement to favor any party against another.

(j)     Attorneys' Fees.  If any legal action, arbitration or other proceeding is brought for the enforcement of this Agreement (including any cross-complaint, counterclaims, or third-party claim), or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding (including all such costs incurred on appeal or in the enforcement of any judgment or settlement), in addition to any other relief to which it or they may be entitled.

(k)     Warranties of Authority.  If any party to this Agreement is not a natural person, the person signing this Agreement on behalf of such entity warrants and represents to all other parties that he, she or it has full power and authority to cause such entity to enter into this Agreement and all power and authority to execute this Agreement on its behalf and to bind such entity to the terms hereof.

(l)     Time.  Time is of the essence of this Agreement and of the performance of each and every provision hereof.

4607895v3                                              -4-

(m)    Further Assurances. Each party shall execute and deliver such additional instruments and other documents and shall take such further actions as may be necessary or appropriate to effectuate, carry out and comply with all of the terms of this Agreement and the transactions contemplated hereby.

5.    Provisions Related to Settlement Agreement.

(a)    WES acknowledges and agrees that "WALKER" (any release of "WALKER" shall include any and all trusts of which WALKER or a member of WALKER's family is a grantor, trustee and/or beneficiary, including, without limitation, the Walker Family 2006 Trust, dated October 3, 1990, the Walker Irrevocable Trust, dated March 29, 2006, the Walker Family 2001 Life Insurance Trust, dated July 18, 2001, and the Roy A. Walker Irrevocable Life Insurance Trust, dated March 7, 2001) and the "WALKER AFFILIATES" (as such capitalized terms are defined in the Settlement Agreement), and Delmar are hereby irrevocably and forever released from the Utility Business Restrictive Covenants as of the Effective Date.

(b)    The parties acknowledge and agree that in the introductory paragraph of the Settlement Agreement, COMMERCIAL SNOW CLEARING, LLC, a Nevada limited liability company, was identified as a Walker affiliate, whereas W.E.S. TRUCKING, INC., a Nevada corporation, was identified as a WES affiliate. Section 1(c) of the Settlement Agreement makes it clear that both COMMERCIAL SNOW CLEARING, LLC and W.E.S. TRUCKING, INC. were sold to WES, therefore the Settlement Agreement is hereby amended to clarify that both COMMERCIAL SNOW CLEARING, LLC and W.E.S. TRUCKING, INC. should have been properly identified as affiliates of WES.

IN WITNESS WHEREOF, the parties have executed this Agreement and caused the same to be duly delivered on their behalf on the day and year first written above.

**Delmar:**                                          **WES:**

DELMAR CONSTRUCTION, a                    WES CONSTRUCTION COMPANY, INC., a
Nevada corporation                                Nevada corporation

By: _____              By: _____
     Roy A. Walker
Its: President                                      Its: _____

# EXHIBIT F

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "**Agreement**") is made and entered into on _____, 2009 (the "**Reference Date**"), but shall be effective for all purposes as of September 1, 2009 (the "**Effective Date**"), by and between DELMAR CONSTRUCTION, a Nevada corporation ("**Buyer**") and WES CONSTRUCTION COMPANY, INC., a Nevada corporation ("**Seller**").

### BACKGROUND INFORMATION:

Buyer desires to purchase certain assets of Seller, and Seller desires to sell such assets to Buyer on the terms and conditions and for the consideration set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants, promises and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.     Purchased Assets. The assets which are the subject of this Agreement and which Seller has agreed to sell and Buyer has agreed to purchase consist of, and are limited to, the assets described on EXHIBIT A attached hereto and incorporated herein by this reference (collectively, the "**Assets**").

2.     Excluded Assets. Notwithstanding any other provision of this Agreement to the contrary, Buyer shall not purchase any assets except the Assets, as enumerated above, and any assets which are not so enumerated shall be deemed excluded assets which Buyer shall not purchase hereunder.

3.     Assumed Liabilities. Seller acknowledges and agrees that Buyer shall only assume and agree to discharge and perform those liabilities of Seller associated with certain contracts of Seller described on EXHIBIT B attached hereto and incorporated herein by this reference (the "**Assumed Liabilities**").

4.     Purchase Price and Manner of Payment; Security Agreement. The purchase price and manner of payment for the Assets shall be as provided below:

(a)     The purchase price for the Assets shall be THREE HUNDRED FIFTY-FOUR THOUSAND AND NO/100THS DOLLARS ($354,000.00) (the "**Purchase Price**").

(b)     The Purchase Price shall be paid in full on the Closing Date by means of (i) immediately available funds paid to Seller in the amount of TWO HUNDRED THIRTY-FOUR THOUSAND AND NO/100THS DOLLARS ($234,000.00), and (ii) Buyer shall deliver its promissory note ("**Note**") to Seller in the original principal amount of ONE HUNDRED TWENTY THOUSAND AND NO/100THS DOLLARS ($120,000.00). The Note shall be in the form attached hereto as EXHIBIT C and incorporated herein by this reference.

(c)     On the Closing Date, Buyer shall deliver to Seller a Security Agreement in the form attached hereto as EXHIBIT D and incorporated herein by this reference.

(d)     Each party hereby covenants and agrees that they will (i) allocate the Purchase Price as described herein, (ii) complete and execute Internal Revenue Service Form 8594 (Asset Acquisition Statement), pursuant to Internal Revenue Code Section 1060, on or after the Closing Date in a manner consistent with the allocation classes described herein, and (iii) deliver their respective Form 8594 to the other party for inspection and approval prior to filing said Form 8594 with the Internal Revenue Service.

| Asset Category | Allocation $ | Allocation Class/Form 8594 |
|---|---|---|
| Contracts/Agreements | $120,000.00 | IV |
| Tangible Personal Property | $234,000.00 | V |

5.     Closing.

(c)     Time and Place.    The closing of the purchase and sale of the Assets (the "**Closing**") shall take place on the Effective Date and shall be coordinated from the offices of Holland & Hart LLP (Buyer's counsel), 5441 Kietzke Lane, Second Floor, Reno, Nevada, or such other time and place as the parties may otherwise mutually agree in writing.  The date on which the Closing occurs shall be referred to as the "**Closing Date**".    For purposes of clarity, the Closing Date shall be on or after the Reference Date, despite some of the documents being dated the Effective Date.

(d)     Closing Procedures.    At the Closing, the parties agree that the following shall occur: (i) Seller shall deliver to Buyer such bills of sale, endorsements, assignments, releases and other instruments as shall be necessary to vest in Buyer good and marketable title to the Assets and shall deliver to Buyer immediate possession of the Assets; (ii) Buyer shall pay to Seller the Purchase Price; and (iii) the parties hereto shall have executed and delivered any agreements or ancillary documents contemplated by this Agreement.

6.     Representations and Warranties of Buyer.    As a material inducement to Seller entering into this Agreement and to consummate the transactions contemplated hereby, Buyer hereby makes the following representations and warranties to Seller:

(a)     Corporate Status.    Buyer is a corporation validly existing and in good standing under the laws of the State of Nevada.

(b)     Power and Authority.    Buyer has the power and authority to execute and deliver this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby.    Buyer has taken all action necessary to authorize the execution and delivery of this Agreement, the performance of its obligations hereunder and the consummation of the transactions contemplated hereby.

(c)     Enforceability.    This Agreement has been duly executed and delivered by the Buyer and constitutes a legal, valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms, except as the same may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and general equitable principles regardless of whether such enforceability is considered in a proceeding at law or in equity.

(d)     No Commissions.  Buyer has not incurred any obligation for any finder's or broker's or agent's fees or commissions or similar compensation in connection with the transactions contemplated hereby.

7.     Representations and Warranties of Seller.  As a material inducement to Buyer to enter into this Agreement and to consummate the transactions contemplated hereby, Seller hereby makes the following representations and warranties to Buyer:

(a)     Corporate Status.  Seller is a corporation existing under the laws of the State of Nevada.

(b)     Power and Authority.  Seller has the authority to execute and deliver this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby.  Seller has taken all action necessary to authorize the execution and delivery of this Agreement, the performance of its obligations hereunder, and the consummation of the transactions contemplated hereby.

(c)     Enforceability.  This Agreement has been duly executed and delivered by Seller and constitutes the legal, valid and binding obligations of Seller, enforceable against Seller in accordance with its terms, except as the same may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and general equitable principles regardless of whether such enforceability is considered in a proceeding at law or in equity.

(d)     Ownership; Assets.  Seller is the record and beneficial owner of the Assets, and owns the Assets, free and clear of all liens, restrictions, encumbrances and claims of any kind or nature whatsoever (except for any liens, restrictions, encumbrances or claims that will be extinguished upon approval from the bankruptcy court of the transactions contemplated by this Agreement).  Seller has not received any notice from any governmental authority that it or any of the Assets is in violation of any applicable rule, law, ordinance or regulation, or requiring the removal, modification, or relocation of any of the Assets.  On the Closing Date, all of the Assets will be in good working order or otherwise suitable in all respects for their intended use by Buyer.

(e)     No Commissions.  Seller has not incurred any obligation for any finder's or broker's or agent's fees or commissions or similar compensation in connection with the transactions contemplated hereby.

(f)     Tax Matters. As of the Closing Date, Seller shall be current in the payment of any and all post-petition taxes or other payments for which Buyer could assume successor liability under Nevada law as a result of the transactions contemplated by this Agreement, including, without limitation, any such taxes or payments contemplated by Nevada Revised Statutes Sections 612.695(2) and 360.525, as amended.

8.    Certain Agreements and Covenants of the Parties.

(a)    Further Assurances.  Each party shall execute and deliver such additional instruments and other documents and shall take such further actions as may be necessary or appropriate to effectuate, carry out and comply with all of the terms of this Agreement and the transactions contemplated hereby.

(b)    Employees.  Buyer shall not be obligated to offer employment to any employee of Seller, but Buyer shall have the right to employ employees of Seller as of the Closing Date, on terms and conditions established by Buyer in its sole and absolute discretion.

(c)    Right of Setoff for Indemnity Claims.  In the event of a breach of any representation, warranty or covenant made in this Agreement by Seller, Buyer shall be entitled to offset the amount of Buyer's actual damages against amounts owed to Seller under the Note.

(d)    Certain Tax Matters.  All sales, use or transfer taxes required to be paid in connection with any of the Assets that must be re-registered with the Nevada Department of Motor Vehicles shall be paid by Buyer.  To the extent a determination is made or asserted by the Nevada Department of Taxation that any taxes are due in connection with the sale and transfer of the tangible personal property described in Part B of Exhibit A, the parties agree that if there is not enough profit associated with the contracts/agreements described in Part A of Exhibit A to pay such taxes, then such taxes due shall be payable as follows: ninety percent (90%) by Seller and ten percent (10%) by Buyer.

9.    Miscellaneous Provisions.

(a)    Bankruptcy Court Approval Required.  The transactions contemplated by this Agreement require, as a condition precedent, approval of this Agreement by the United States Bankruptcy Court for the District of Nevada (Case No. BK-N-09-52177-GWZ (Lead)); specifically, the sale and assignment must be approved free and clear pursuant of liens and encumbrances pursuant to 11 USC Sections 363 and 365, and the finding of a good faith purchaser under 11 USC 363(m).

(b)    Binding Effect; Benefits.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, successors, executors, administrators and assigns.  Notwithstanding anything in this Agreement to the contrary, nothing in this Agreement, expressed or implied, is intended to confer on any person other than the parties hereto or their respective heirs, successors, executors, administrators and assigns any rights, remedies, obligations or liabilities under or by reason of this Agreement.

(c)    Entire Agreement.  This Agreement, together with the exhibits and schedules, if any, and other documents contemplated hereby or incorporated herein by reference, constitutes the final written expression of all of the agreements between the parties, and is a complete and exclusive statement of the terms thereof.  It supersedes all prior and contemporaneous agreements, representations and understandings of the parties.  The parties specifically represent, each to the other, that there are no additional or supplemental agreements between them related in any way to the matters contained herein unless specifically included or referred to herein.

(d)     Governing Law. This Agreement, and all questions relating to its validity, interpretation, performance and enforcement (including, without limitation, provisions concerning limitations of action), shall be governed by and construed in accordance with the laws of the State of Nevada (exclusive of the conflict of laws provisions thereof) applicable to agreements made and to be performed entirely within such state.

(e)     Counterparts; Delivery of Signatures. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement may be executed and delivered by facsimile or electronic means.

(f)     Headings. The headings in this Agreement are intended solely for convenience of reference and shall be given no effect in the construction or interpretation of this Agreement.

(g)     Modification and Waivers. No amendment, waiver of compliance with any provision or condition hereof, or consent pursuant to this Agreement shall be effective unless evidenced by an instrument in writing signed by the parties.

(h)     Severability. If for any reason whatsoever, any one or more of the provisions of this Agreement shall be held or deemed to be illegal, inoperative, unenforceable or invalid as applied to any particular case or in all cases, such circumstances shall not have the effect of rendering such provision illegal, inoperative, unenforceable or invalid in any other case or of rendering any of the other provisions of this Agreement illegal, inoperative, unenforceable or invalid.

(i)     Drafting. Each party to this Agreement represents that he has read and understood each provision of this Agreement and has discussed this Agreement with legal counsel or has been advised to and has been provided the opportunity to discuss this Agreement with legal counsel. The parties hereto therefore stipulate and agree that the rule of construction to the effect that any ambiguities are to be or may be resolved against the drafting party shall not be employed in the interpretation of this Agreement to favor any party against another.

(j)     Attorneys' Fees. If any legal action, arbitration or other proceeding is brought for the enforcement of this Agreement (including any cross-complaint, counterclaims, or third-party claim), or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding (including all such costs incurred on appeal or in the enforcement of any judgment or settlement), in addition to any other relief to which it or they may be entitled.

(k)     Warranties of Authority. If any party to this Agreement is not a natural person, the person signing this Agreement on behalf of such entity warrants and represents to all other parties that he, she or it has full power and authority to cause such entity to enter into this Agreement and all power and authority to execute this Agreement on its behalf and to bind such entity to the terms hereof.

4606789v5                                          -5-

(l)    Time. Time is of the essence of this Agreement and of the performance of each and every provision hereof.

(m)    No Waivers or Releases of Claims. Nothing in this Agreement, or in any document on instrument contemplated hereby, shall constitute or be construed or interpreted as a waiver or release by (i) Buyer or Roy A. Walker of any claims, causes of action, offsets or suits that they might have against Seller, or (ii) Seller of any claims, causes of action, offsets or suits that it might have against Buyer or Roy A. Walker, from and after July 28, 2009 (the date of that certain Settlement Agreement and Mutual Release of All Claims to which Seller, Roy A. Walker and other parties are parties).

IN WITNESS WHEREOF, the parties have executed this Agreement and caused the same to be duly delivered on their behalf on the day and year first written above.

**Buyer:**                                                         **Seller:**

DELMAR CONSTRUCTION, a                      WES CONSTRUCTION COMPANY, INC., a
Nevada corporation                                      Nevada corporation

By: _____              By: _____
      Roy A. Walker
Its:  President                                              Its: _____

The undersigned affixes his signature for purposes of Section 9(m) above.

_____

Roy A. Walker

## EXHIBIT A

A. Bonded projects:

Town of Minden 2009 Alley and County Road Waterline Upgrades, Public Works Project
Identifying Number DO-2009-113.

Washoe County, Michael D. Thompson Trailhead at Hunter Creek.

United States Border Patrol Station, Tucson, Arizona (lead contractor, Suulataaq, Inc.).

B. Tangible Personal Property as described on the attached pages B1-B6.

C. Contracts/Agreements:

Agreement No. 2392PB between WES Construction Company, Inc. and AT&T Services, Inc.,
dated effective February 1, 2007, for Outside Plant/Labor Construction Services.

The following agreements between WES Construction Company, Inc. and NV Energy (formerly
Sierra Pacific Power Company):

   a) D Budget/Street and Highways Annual Construction
   b) Underground Conduits and Vaults (Purchase Order 0003010766 dated May 13, 2008)
   c) Gas Service Completions, Contract No. 005329
   d) Gas Marketing
   e) Black Wrap Gas & Main Service
   f) Spoils Removal Services, Contract 005315

D. U.S. Government "Mentor-Protégé" Program.

Exhibit A, Part B - Tangible Personal Property Page B-1

DELMAR CONSTRUCTION
CONSIDERATION TO PURCHASE-WESCO

REV: 10/7/09 PG#1

| EQUIP NO | DESCRIPTION | HILCO-$ | RB-$ | SECURED | RW OFFER -$ | REMARKS |
|---|---|---|---|---|---|---|
| 4078 | F350 CREWCAB PICKUP 4X4 | 5,000.00 | 6,000.00 | WESCO | 6,000.00 | WITH ALL CONTENTS AND LESS NEW TIRES |
| 4087 | F350 CREWCAB PICKUP 4X4 | 5,000.00 | 8,500.00 | WESCO | 7,000.00 | WITH ALL CONTENTS |
| 6084 | TK 5HRA36 20 YD END DUMP | 20,000.00 | 8,000.00 | WESCO | 8,000.00 | WITH ALL CONTENTS |
| 4083 | F250 PICKUP 4X4 | 5,000.00 | 6,000.00 | WESCO | 5,500.00 | WITH ALL CONTENTS |
| 40123 | F250 PICKUP 4X4 | 5,000.00 | 8,500.00 | WESCO | 5,500.00 | WITH ALL CONTENTS |
| 50100 | W900 TRANSPORT | 30,000.00 | 28,000.00 | WESCO | 28,000.00 | WITH ALL CONTENTS |
| 50102 | FORD LT 9000 10 YD DUMP | 12,500.00 | 10,000.00 | WESCO | 10,000.00 | WITH ALL CONTENTS |
| 50114 | FORD LT 9513 10 YD DUMP | 12,500.00 | 15,000.00 | WESCO | 14,000.00 | WITH ALL CONTENTS |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | SUB-TOTAL | $95,000.00 | $90,000.00 | | $84,000.00 | |
| | LESS COMMISSION 10% | 9,500.00 | 9,000.00 | | 8,400.00 | |
| | LESS READY 3% | 2,850.00 | 2,700.00 | | 2,520.00 | |
| | LESS TRANSPORT | 250.00 | 250.00 | | 250.00 | |
| | LESS REPAIRS PRIOR TO APPRAS/AL | | | | | |
| | TOTAL | $82,400.00 | $78,050.00 | | $72,830.00 | |

10/17/2009

1

Exhibit A, Part B - Tangible Personal Property Page B-2

DELMAR CONSTRUCTION COMPANY, INC.
OFFER TO PURCHASE -WESCO

REV: 9/28/09 PG#2

| EQUIP NO | DESCRIPTION | HILCO-$ | RB-$ | SECURED | RW OFFER -$ | REMARKS |
|---|---|---|---|---|---|---|
| 6017 | CAROUSEL GAS PIPE TRAILER | 1,000.00 | 0.00 | WESCO | 250.00 | WITH ALL CONTENTS |
| 6068 | TK 70HT HDY TAIL TRAILER | 10,000.00 | 15,000.00 | WESCO | 15,000.00 | WITH ALL CONTENTS |
| 6071 | TK 40LP-2600 FLATBED | 10,000.00 | 4,000.00 | WESCO | 4,000.00 | WITH ALL CONTENTS |
| 6094 | TK 40LP-2400 FLATBED | 10,000.00 | 4,000.00 | WESCO | 4,000.00 | WITH ALL CONTENTS |
| 6098 | TKT10U-202 TILT TRAILER | 3,000.00 | 4,000.00 | WESCO | 4,000.00 | WITH ALL CONTENTS |
| 40102 | F450 FLATBED 2X4 | 5,500.00 | 0.00 | WESCO | 5,500.00 | WITH ALL CONTENTS |
| 40107 | F450 FLATBED 2X4 | 5,500.00 | 6,000.00 | WESCO | 6,000.00 | WITH ALL CONTENTS |
| 40109 | F450 FLATBED 4X4 | 6,000.00 | 7,000.00 | WESCO | 6,000.00 | WITH ALL CONTENTS |
| 40113 | F450 DUMP 2x4 | 5,000.00 | 6,000.00 | WESCO | 6,000.00 | WITH ALL CONTENTS |
| 40118 | F450 FLATBED 2X4 | 6,000.00 | 7,000.00 | WESCO | 5,000.00 | WITH ALL CONTENTS |
| 40125 | F450 FLATBED 2X4 | 15,000.00 | 13,000.00 | WESCO | 13,000.00 | WITH ALL CONTENTS |
| 40126 | F450 FLATBED 2X4 | 15,000.00 | 0.00 | WESCO | 13,000.00 | WITH ALL CONTENTS |
| 40132 | F450 FLATBED 2X4 | 10,000.00 | 12,000.00 | WESCO | 12,000.00 | WITH ALL CONTENTS |
| 40135 | F450 FLATBED 4X4 | 6,500.00 | 7,500.00 | WESCO | 7,500.00 | WITH ALL CONTENTS |
| 50115 | FL80 WATER TRUCK | 15,000.00 | 0.00 | WESCO | 15,000.00 | WITH ALL CONTENTS |
| 50127 | IHC 4900  WATER TRUCK | 17,500.00 | 20,000.00 | WESCO | 15,000.00 | WITH ALL CONTENTS |
| 60120 | TKT10U-202 TILT TRAILER | 3,500.00 | 6,000.00 | WESCO | 4,000.00 | WITH ALL CONTENTS |
| 60126 | TK40LP-2400 FLATBED TRAILER | 10,000.00 | 4,000.00 | WESCO | 4,000.00 | WITH ALL CONTENTS |
| | SUB-TOTAL | 154,500.00 | 115,500.00 | | 140,250.00 | |
| | LESS COMMISSION 10% | 15,450.00 | 11,550.00 | | 14,125.00 | |
| | LESS READY 5% | 7,725.00 | 5,775.00 | | 7,062.50 | |
| | LESS TRANSPORT | 525.00 | 525.00 | | 525.00 | |
| | LESS REPAIRS PRIOR TO APPRASIAL | | | | | |
| | TOTAL | $130,800.00 | $97,650.00 | | $119,537.50 | |

1

10/17/2009

Exhibit A, Part B - Tangible Personal Property Page B-3

DELMAR CONSTRUCTION COMPANY, INC.
OFFER TO PURCHASE - MB BANK (LIGHTNING AUCTIONS)

REV: 10/3/09                                                                 pg#4

| EQUIP NO | DESCRIPTION | HILCO-$ | RB-$ | SECURED | RW OFFER -$ | REMARKS |
|---|---|---|---|---|---|---|
| VAN #1 | STORAGE VAN | | | MB BANK | $1,250.00 | WITH ALL CONTENTS |
| VAN #2 | STORAGE VAN | | | MB BANK | $1,250.00 | WITH ALL CONTENTS |
| VAN #3 | STORAGE VAN | | | MB BANK | $50.00 | WITH ALL CONTENTS |
| VAN #4 | STORAGE VAN | | | MB BANK | $50.00 | WITH ALL CONTENTS |
| VAN #5 | STORAGE VAN | | | MB BANK | $1,250.00 | WITH ALL CONTENTS |
| VAN #6 | STORAGE VAN | | | MB BANK | $1,250.00 | WITH ALL CONTENTS |
| VAN #7 | STORAGE VAN | | | MB BANK | $1,250.00 | WITH ALL CONTENTS |
| VAN #8 | STORAGE VAN | | | MB BANK | $50.00 | WITH ALL CONTENTS |
| VAN #9 | STORAGE VAN | | | MB BANK | $50.00 | WITH ALL CONTENTS |
| VAN #10 | STORAGE VAN | | | MB BANK | $50.00 | WITH ALL CONTENTS |
| VAN #11 | STORAGE VAN | | | MB BANK | $1,250.00 | WITH ALL CONTENTS |
| Van #12 | STORAGE VAN          (needs shoring doc's) | | | MB BANK | $2,000.00 | WITH ALL CONTENTS (NEEDS SHORING DOCS) |
| Van #13 | STORAGE VAN | | | MB BANK | $1,250.00 | WITH ALL CONTENTS |
| FF&E | OFFICES minus WORKSTATIONS & SERVERS | | | MB BANK | $3,500.00 | WITH ALL CONTENTS AND CLEANUP  * |
| WORKSTATION | INTEL CORE DUO(6ea @ $300.00) | | | MB BANK | $1,500.00 | WITH OPERATING SYSTEMS SOFTWARE & LICENCES* |
| WORKSTATION | AMD ATHION X (3ea @ $300.00) | | | MB BANK | $900.00 | WITH OPERATING SYSTEMS SOFTWARE & LICENCES* |
| SERVERS | SERVER SYSTEM #1 MSA 2000 | | | MB BANK | $3,500.00 | WITH ALL CONTENTS AND COMPLETE* |
| SERVERS | SERVER SYSTEM #2 DL380 | | | MB BANK | $1,500.00 | WITH ALL CONTENTS AND COMPLETE* |
| SERVERS | SERVER SYSTEM #3 DL360 | | | MB BANK | $500.00 | WITH ALL CONTENTS AND COMPLETE* |
| | | | | | | |
| SOFTWARE | LS COMPLETE SYSTEM, LICENSES, KEY'S | | | MB BANK | $7,000.00 | WITH ALL LICENCES, KEYS, CODES* |
| SHOP | CONTENTS OF SHOP | | | MB BANK | $1,000.00 | WITH ALL CONTENTS AND CLEANUP** |
| | CONTINUED ON PAGE 2 | | | | | |

10/17/2009

1

Exhibit A, Part B - Tangible Personal Property Page B-4

DELMAR CONSTRUCTION COMPANY, INC.
OFFER TO PURCHASE - MB BANK (LIGHTNING AUCTIONS)

REV: 10/3/09          pg#4

| EQUIP NO | DESCRIPTION | HILCO-$ | RB-$ | SECURED | RW OFFER -$ | REMARKS *all or none |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | SUB-TOTAL | | | | $35,850.00 | |
| | LESS COMMISSION 40% | | | | $8,590.00 | |
| | LESS READY 5% | | | | $1,073.75 | |
| | LESS TRANSPORT | | | | $0.00 | |
| | TOTAL | | | | $27,196.25 | |

2

10/17/2009

Exhibit A, Part B - Tangible Personal Property Page B-5

DELMAR CONSTRUCTION COMPANY, INC.
OFFER TO PURCHASE-MB BANK

REV: 9/28/09 PG#3

| EQUIP NO | DESCRIPTION | HILCO-$ | RB-$ | SECURED | RW OFFER -$ | REMARKS |
|---|---|---|---|---|---|---|
| 1102 | RC80 8000LB FORKLIFT | 7,000.00 | 4,000.00 | MB BANK | 3,500.00 | WITH ALL CONTENTS |
| 7015 | SW320 SMOOTH DRUM | 5,000.00 | 5,000.00 | MB BANK | 5,000.00 | WITH ALL CONTENTS |
| 9016 | 185 TOW COMPRESSOR | 3,000.00 | 3,000.00 | MB BANK | 3,000.00 | WITH ALL CONTENTS |
| 9017 | 185 JD TOW COMPRESSOR | 3,500.00 | 3,000.00 | MB BANK | 3,000.00 | WITH ALL CONTENTS |
| 9020 | 185 JDR TOW COMPRESSOR | 3,000.00 | 3,000.00 | MB BANK | 3,000.00 | WITH ALL CONTENTS |
| 9021 | 185 JDR TOW COMPRESSOR | 3,000.00 | 3,500.00 | MB BANK | 3,000.00 | WITH ALL CONTENTS |
| 9023 | 185 IR TOW COMPRESSOR | 3,500.00 | 5,000.00 | MB BANK | 3,000.00 | WITH ALL CONTENTS |
| 9024 | PMD-800 GT VACUMN TRAILER | 7,500.00 | 0.00 | MB BANK | 5,000.00 | WITH ALL CONTENTS |
| 9638 | LT LIGHT TOWER | 1,500.00 | 3,500.00 | MB BANK | 2,000.00 | WITH ALL CONTENTS |
| 9641 | MQ JA36HA 3.9 KW GEN SET | 500.00 | 0.00 | MB BANK | 700.00 | INCLUDES WACKER GEN SET & MISC TOOLS FOR TRUCK NO. 40126 |
| 9642 | MQ JA36HA 3.9 KW GEN SET | 500.00 | 0.00 | MB BANK | 700.00 | INCLUDES WACKER GEN SET & MISC TOOLS FOR TRUCK NO. 40129 |
| 9646 | MQ JA36HA 3.9 KW GEN SET | 500.00 | 0.00 | MB BANK | 700.00 | INCLUDES WACKER GEN SET & MISC TOOLS FOR TRUCK NO. 40132 |
| 9647 | MQ JA36HA 3.9 KW GEN SET | 500.00 | 0.00 | MB BANK | 700.00 | INCLUDES WACKER GEN SET & MISC TOOLS FOR TRUCK NO. 40118 |
| 9652 | MQ 5KW GEN SET-40107 | 600.00 | 0.00 | MB BANK | 700.00 | INCLUDES WACKER GEN SET & MISC TOOLS FOR TRUCK NO. 40107 |
| 72520 | HOSE REEL TRAILER | 0.00 | 1,500.00 | MB BANK | 500.00 | WITH ALL CONTENTS |
|  |  |  |  |  |  |  |
|  | CONTINUED ON PAGE 2 |  |  |  |  |  |

1

10/17/2009

Exhibit A, Part B - Tangible Personal Property Page B-6

DELMAR CONSTRUCTION COMPANY, INC.
OFFER TO PURCHASE-MB BANK

REV: 9/28/09  PG#3

| EQUIP NO | DESCRIPTION | HILCO-$ | RB-$ | SECURED | RW OFFER -$ | REMARKS |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | SUB-TOTAL | $39,600.00 | $31,500.00 | | $34,500.00 | |
| | LESS COMMISSION 10% | 12,650.00 | 12,450.00 | | 12,050.00 | |
| | LESS READY 5% | 6,330.00 | 6,225.00 | | 6,025.00 | |
| | LESS TRANSPORT | 250.00 | 250.00 | | 250.00 | |
| | LESS REPAIRS PRIOR TO APPRASIALS | 0.00 | 0.00 | | 0.00 | |
| | TOTAL | $20,360.00 | $12,575.00 | | $16,175.00 | |

2

10/17/2009

## EXHIBIT B

A. Bonded projects:

Town of Minden 2009 Alley and County Road Waterline Upgrades, Public Works Project Identifying Number DO-2009-113.

Washoe County, Michael D. Thompson Trailhead at Hunter Creek.

United States Border Patrol Station, Tucson, Arizona (lead contractor, Suulataaq, Inc.).

B. Utility Contracts/Agreements:

Agreement No. 2392PB between WES Construction Company, Inc. and AT&T Services, Inc., dated effective February 1, 2007, for Outside Plant/Labor Construction Services.

The following agreements between WES Construction Company, Inc. and NV Energy (formerly Sierra Pacific Power Company):

    a) D Budget/Street and Highways Annual Construction
    b) Underground Conduits and Vaults (Purchase Order 0003010766 dated May 13, 2008)
    c) Gas Service Completions, Contract No. 005329
    d) Gas Marketing
    e) Black Wrap Gas & Main Service
    f) Spoils Removal Services, Contract 005315

C. U.S. Government "Mentor-Protégé" Program.

# EXHIBIT G

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement ("**Agreement**") is made and entered into on _____, 2009 (but shall be effective for all purposes as of September 1, 2009), by and between WES CONSTRUCTION COMPANY, INC., a Nevada corporation ("**Assignor**"), and DELMAR CONSTRUCTION, a Nevada corporation ("**Assignee**"). Terms not otherwise defined herein shall have the same meaning as set forth in the Purchase Agreement (defined below).

### Recitals:

A.    Assignor and Assignee are parties to that certain Asset Purchase Agreement (the "**Purchase Agreement**") dated effective September 1, 2009, pursuant to which Assignor will sell and Assignee will buy certain assets of Assignor.

B.    Pursuant to and in accordance with the terms and conditions of the Purchase Agreement, Assignee desires to assume the rights and obligations of Assignor as they pertain to certain contracts of Assignor described on EXHIBIT A attached hereto and incorporated herein by this reference (the "**Assigned Contracts**").

NOW, THEREFORE, in consideration of the mutual covenants, promises and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.    Assignment.  Assignor does hereby grant, bargain, sell, convey, assign, transfer, set over and deliver unto Assignee, it successors and assigns, all of Assignor's right, title and interest in and to Assigned Contracts.

2.    Assumption.  Assignee hereby assumes and agrees to discharge and perform, subject to receiving the required approvals and consents, if any, Assignor's obligations under the Assigned Contracts.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first written above.  This Agreement may be executed and delivered by facsimile or electronically and in counterparts.

**Assignor:**

WES CONSTRUCTION COMPANY, INC.,
a Nevada corporation

By: _____

Its: _____

4606849v5

**Assignee:**

DELMAR CONSTRUCTION, a Nevada corporation

By: _____
    Roy A. Walker
Its: President

## EXHIBIT A

A. Bonded projects:

Town of Minden 2009 Alley and County Road Waterline Upgrades, Public Works Project Identifying Number DO-2009-113.

Washoe County, Michael D. Thompson Trailhead at Hunter Creek.

United States Border Patrol Station, Tucson, Arizona (lead contractor, Suulataaq, Inc.).


B. Utility Contracts/Agreements:

Agreement No. 2392PB between WES Construction Company, Inc. and AT&T Services, Inc., dated effective February 1, 2007, for Outside Plant/Labor Construction Services.

The following agreements between WES Construction Company, Inc. and NV Energy (formerly Sierra Pacific Power Company):

      a) D Budget/Street and Highways Annual Construction
      b) Underground Conduits and Vaults (Purchase Order 0003010766 dated May 13, 2008)
      c) Gas Service Completions, Contract No. 005329
      d) Gas Marketing
      e) Black Wrap Gas & Main Service
      f) Spoils Removal Services, Contract 005315


C. U.S. Government "Mentor-Protégé" Program.

# EXHIBIT I

EXHIBIT___*C*___

## SECURED PROMISSORY NOTE

$120,000.00                                                                    Reno, Nevada
                                                                      _____, 2009

       DELMAR CONSTRUCTION, a Nevada corporation, promises to pay to WES CONSTRUCTION COMPANY, INC., a Nevada corporation, or order, at such place as the holder of this note shall designate in writing, the principal sum of ONE HUNDRED TWENTY THOUSAND AND NO/100THS DOLLARS ($120,000.00), with interest thereon from the date of this note, until paid, at the rate of 3.25% per annum. The entire unpaid principal balance and accrued interest under this note shall be due and payable on the date that is one hundred and twenty (120) days after the date of this note (or the next business day, if such date falls on a weekend or holiday recognized in the State of Nevada). THE PRIVILEGE IS RESERVED TO PAY MORE THAN THE SUM DUE AT ANY TIME PRIOR TO MATURITY, WITHOUT PENALTY.

       The obligations under this note are secured as set forth in that certain security agreement of even date herewith between maker and holder.

       This note shall be interpreted and enforced in accordance with the laws of the State of Nevada.

DELMAR CONSTRUCTION,
a Nevada corporation

By: _____
     Roy A. Walker
Its:  President

4661904v1

# EXHIBIT J

## SECURITY AGREEMENT

This Security Agreement (the "**Agreement**") is made and entered into on _____, 2009, by and among DELMAR CONSTRUCTION, a Nevada corporation ("**Debtor**"), whose address is 120 Burks Blvd., Reno, Nevada 89523, and WES CONSTRUCTION COMPANY, INC., a Nevada corporation ("**Secured Party**"), whose address is c/o Jeffrey L. Hartman, Esq., Hartman & Hartman, 510 W. Plumb Lane, Suite B, Reno, Nevada 89509.

### W I T N E S S E T H:

1.     CREATION OF SECURITY INTEREST. Debtor hereby pledges, assigns and transfers to Secured Party, and grants Secured Party a security interest in and to the Collateral, as that term is defined in Section 3 hereof, pursuant to the Uniform Commercial Code Secured Transactions as in effect in the State of Nevada (the "**UCC**").

2.     OBLIGATIONS SECURED. The obligations secured by said security interest are briefly described as follows:

a.     all obligations of Debtor to Secured party under the terms of that certain Secured Promissory Note of even date herewith in the original principal amount of $120,000.00; and

b.     the expenses and costs incurred or paid by Secured Party in the preservation, enforcement and realization of the rights of Secured Party and the duties of Debtor pursuant to said obligations and under this Agreement including, without limitation, attorneys' fees and court costs; and

c.     the expenses and costs incurred or paid by Secured Party to preserve, maintain and rehabilitate the collateral; and

d.     the expenses and costs incurred or paid by Secured Party in performing the duties of Debtor pursuant to said obligations and under this Agreement for the account of Debtor.

3.     DESCRIPTION OF COLLATERAL. The collateral consists of the accounts receivable associated with the contracts described in EXHIBIT A attached hereto and incorporated herein and made a part hereof by reference, together with the Proceeds, substitutions, replacements, accessions and products thereof and pertaining thereto (the "**Collateral**"). Except as specifically defined in this Agreement, all words, terms and/or phrases used herein shall be defined by the applicable definition ascribed thereto in the UCC, which definition is incorporated herein by reference as if fully set forth herein.

4.     TAXES, ASSESSMENTS AND LIENS. Debtor agrees to pay prior to delinquency all taxes, charges, encumbrances, liens and assessments against the Collateral and, upon the failure of Debtor to do so, Secured Party may, at its option, pay any of the same and shall be the sole judge of the legality or validity thereof and the amount necessary to discharge the same.

1

4662110v3

5.     DEFINITION OF DEFAULT.     The occurrence of any of the following, continuing after a 10-day notice to the Debtor given in the manner provided in paragraph 12 below, shall be a default under this Agreement by Debtor:

    a.  failure of Debtor to pay when due any obligation secured hereby,

    b.  failure of Debtor to perform any other obligations secured hereby or contained herein when the same should be performed,

    c.  the transfer by Debtor of the Collateral in breach or violation of Section 9 hereof,

    d.  filing of a petition by or against Debtor under any state or federal law relating to the relief of debtors, or

    e.  attachment or levy on any Collateral.

6.     ACCELERATION.  Upon the occurrence of a default, Secured Party may, at its option, declare immediately due and payable all obligations of Debtor to Secured Party, and the same shall thereupon become immediately due and payable without notice to or demand on Debtor.

7.     REMEDIES.  The rights, powers and remedies given to Secured Party by this Agreement shall be in addition to all rights, powers and remedies given to Secured Party by virtue of any statute or rule of law.  Any forbearance or failure or delay by Secured Party in exercising any right, power or remedy hereunder shall not be deemed to be a waiver of any other right, power or remedy, nor as a continuing waiver.

8.     POWER OF ATTORNEY.  Debtor appoints Secured Party the attorney in fact of Debtor to prepare, file or record one or more financing statements, applications for registration or certificate of ownership or title, and like papers, and to take any other action deemed necessary, useful or desirable by Secured Party to perfect and preserve Secured Party's security interest hereunder.

9.     TRANSFER OF COLLATERAL.  Debtor will not sell or transfer nor suffer any sale or transfer of the Collateral, nor any part thereof, nor any interest of Debtor therein, without the prior written consent of Secured Party.

10.     TIME.  Time is of the essence of this Agreement.

11.     BINDING EFFECT.  This Agreement shall inure to the benefit of, and be binding upon, the heirs, assigns, transferees, personal representatives and successors in interest, in any capacity, of the parties hereto.

2

12.    NOTICES.  Any notice which either party hereto deems necessary, useful or desirable to give the other may be given by depositing the notice or a copy thereof in the United States mails addressed to such other party at the address shown herein.  Receipt thereof by the addressee is conclusively presumed on the business day next following the dispatch thereof.  For purposes of NRS 104.9504(3), the parties agree that mailing a written notice to Debtor at the address set forth on page 1 of this Agreement as the address of Debtor's residence or chief place of business, or at such other address as Debtor has notified Secured Party in writing, which notice specifies the time and place of any public or private sale of the collateral, 10 days before the date such sale is to take place shall be deemed to be reasonable notification of such sale.

13.    DEBTOR'S OBLIGATION TO MAKE COLLATERAL AVAILABLE TO SECURED PARTY.  Upon default, the Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party which is reasonably convenient to both parties.  Without removal Secured Party may render the Collateral unusable and may dispose of the Collateral on the Debtor's premises under NRS 104.9504.

14.    TERMINATION OF AGREEMENT.  When all obligations secured hereby have been satisfied in full, this Agreement shall terminate and, upon such termination, Secured Party will file necessary paperwork to release any financing statement or statements filed by Secured Party to perfect the security interest in the Collateral herein granted.

15.    GOVERNING LAW.  This Agreement shall be governed by and construed under laws of the state of Nevada.

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement the day and year first above written at the place specified.

**DEBTOR:**

DELMAR CONSTRUCTION, a Nevada corporation

By: _____
         Roy A. Walker
Its:   President


**SECURED PARTY:**

WES CONSTRUCTION COMPANY, INC., a Nevada corporation

By: _____

Its: _____

## EXHIBIT A

Agreement No. 2392PB between WES Construction Company, Inc. and AT&T Services, Inc., dated effective February 1, 2007, for Outside Plant/Labor Construction Services.

The following agreements between WES Construction Company, Inc. and NV Energy (formerly Sierra Pacific Power Company):

      a) D Budget/Street and Highways Annual Construction
      b) Underground Conduits and Vaults (Purchase Order 0003010766 dated May 13, 2008)
      c) Gas Service Completions, Contract No. 005329
      d) Gas Marketing
      e) Black Wrap Gas & Main Service
      f) Spoils Removal Services, Contract 005315

And any renewals or extensions thereof and any new contracts with AT&T Services, Inc. or NV Energy.