1  Keith J. Tierney
   Trustee                                    E-Filed 6/7/2010
2  10580 N. McCarran Blvd., Bldg. 115-403
   Reno, NV 89503
3  (775) 622-3850

4

5

6              UNITED STATES BANKRUPTCY COURT

7                   DISTRICT OF NEVADA

8  IN RE:                          CASE NOS. BK-N-09-52177-GWZ
                                             BK-N-09-52178-GWZ
9  WES CONSTRUCTION COMPANY,                 BK-N-09-52181-GWZ
   INC., a Nevada corporation,    (Jointly administered under 09-52177)
10
   HEAVY EQUIPMENT SERVICES,       CHAPTER   7
11 LLC
   A Nevada limited liability company,  TRUSTEE'S RESPONSE TO
12                                       OFFICIAL COMMITTEE OF
   TRUCKING SERVICES, LLC,               UNSECURED CREDITORS' MOTION
13 A Nevada limited liability company,   FOR ORDER 1) RECONSIDERING
                                         ORDERS APPROVING CHAPTER 7
14         Debtors.                      TRUSTEE'S EX PARTE APPLICATIONS
                                         TO EMPLOY AND TO PAY STEVE
15                                       BENNYHOFF; 2) REQUIRING MR.
                                         BENNYHOFF TO DISGORGE FEES
16                                       PAID TO HIM DURING THE CHAPTER
                                         11 PHASE OF THIS CASE; AND 3)
17                                       PROVIDING FOR THE CONTINUANCE
                                         OF THE § 1102(a)(1) UNSECURED
18                                       CREDITORS' COMMITTEE

19                                       Hearing Date: June 21, 2010
                                         Hearing Time: 2:00 p.m.
20                              /
21

22     Keith J. Tierney, chapter 7 trustee ("Trustee") responds to the Official Committee

23 of Unsecured Creditors' Motion for Order 1) Reconsidering Orders Approving Chapter 7

24 Trustee's Ex Parte Applications to Employ and to Pay Steve Bennyhoff; 2) Requiring Mr.

25 Bennyhoff to Disgorge Fees Paid to Him During the Chapter 11 Phase of this Case; and

26 3) Providing for the Continuance of the § 1102(a)(1) Unsecured Creditors' Committee

27 ("Motion"). This Response is based upon the following discussion of facts and law and is

28 also supported by the separately filed declarations of Keith Tierney and Steve Bennyhoff.

The Trustee also requests the Court take judicial notice of the papers on file in this case.

## FACTS

1. This case was filed as a chapter 11 by WES Construction Company, Inc. ("WES") on July 6, 2009. At the time the case was filed, the Debtor was represented by Alan Smith, Esq.

2. On August 18, 2009, the United States Trustee appointed the unsecured creditors' committee ("Committee"). **DE 101.**

3. On September 8, 2009, the Court entered its Order denying the application to employ Smith as counsel for the chapter 11 estate. **DE 142.**

4. At the time the chapter 11 petition was filed, WES was being managed by Mark Smith, David Clark and George Tapia as a *de facto* board of directors. Michael Brandt was the chief financial officer.

5. On October 13, 2009, the Court entered its Order Approving Application To Employ Hartman & Hartman as Debtors' counsel, effective as of August 28, 2009. **DE 195.**

6. On October 13, 2009, creditor MB Financial ("MB") filed its motion to convert the case to one under chapter 7. **DE 191.**

7. On November 13, 2009, WES filed its Motion Authorizing Sale Of Personal Property, Authorizing the Assumption And Assignment Of Executory Contracts And The Rejection Of Unexpired Lease Of Non-Residential Real Property ("Sale Motion"). **DE 214.** Hearing on the Sale Motion was set for December 19, 2009.

8. On November 16, WES filed its Status Report summarizing for the Court and interested parties the approximate financial condition of the estate. **DE 221.** A copy of the Status Report is attached as Exhibit A.

9. On December 8, 2009, the Court granted the motion to convert. **DE 241.**

10. The Trustee was appointed on January 5, 2010. **DE 252.**

11. At the time the Trustee was appointed in this case, the chapter 11 operations had ceased several months earlier and there were part-time bookkeepers handling the

minimal activities ongoing at the time.

12. In order to fulfill his obligations under §704, the Trustee determined that he needed the services of someone with a background in construction and construction accounting to assist him in that regard. Prior to the Trustee's appointment, Mark Smith, the acting chief officer for WES, had engaged the services of Steve Bennyhoff to assist the estate in certain accounting related activities because the previous WES CFO, Michael Brandt, had resigned. Mr. Smith gave Mr. Bennyhoff a good recommendation and the Trustee determined to engage Mr. Bennyhoff because, in the Trustee's opinion, Mr. Bennyhoff is qualified and had attained a significant degree of 'institutional knowledge' about the books and records of WES and the problems to be addressed.

13. The Trustee communicates with Mr. Bennyhoff on a regular basis and reviews the work product prepared by him. It is up to the Trustee to determine whether and how to proceed with the work product prepared by Mr. Bennyhoff. Mr. Bennyhoff has no decision making capacity in the conduct of his duties.

14. It made no sense to the Trustee me to bring on yet another individual who would have a steep learning curve at additional expense to the estate. Finally, the Trustee was unwilling to engage an accounting firm to do the work because, in my experience, it would want to staff the matter with junior accountants whose work would then need to be reviewed by more senior people. The Trustee's opinion, based upon his experience, is that engaging Mr. Bennyhoff provided the most cost-effective alternative available to the estate for the necessary accounting related functions.

15. As set forth in Mr. Bennyhoff's Rule 2014 Declaration, the following describes many, but not all of the duties being performed by Mr. Bennyhoff at the Trustee's direction:

- Made calculations and booked journal entries adjusting the accounts for the items sold at the Ritchie Bros. and Lightning auctions.
- Located the hard copy payroll records and created spreadsheets to capture the weekly payroll totals to be able to prepare W-2s, as well as capture payment

information for 1099s.
- Purchased software and supplies, then created, printed and mailed W-2's and 1099's.
- Terminated AT&T land and wireless lines still active in February.
- Terminated licenses, policies, and services no longer needed by WES Construction.
- Interfaced with insurance companies and State agencies to provide data to assist with year-end information reporting and audits.
- Reconciled Heritage Bank checking accounts and Hartman Trust account to WES Construction general ledger.
- Interfaced with Lisa and Kandi on an on-going basis to help answer questions and review
- Facilitated the boxing and return of WES Construction's mailing machine to Pitney Bowes.

In addition, the following tasks still need to be completed:
- Coordinate with R Construction in preparing an income statement that determines the net profit resulting from Roy Walker's completion of the utility contracts that were unfinished as of 9/1/09.
- Reconstruct from hardcopy reports financial information for WES Construction to enable the accounting firm to prepare financial statements and tax returns for 2009.
- Calculate profit/loss on the sale and book journal entries for WES Trucking, Inc. auction items.
- Prepare trial balances for 2008 and 2009 for WES Trucking, Inc. and Commercial Snow Clearing LLC to give to the accounting form for financial statement preparation and tax return filing.
- Compile data to provide to ING to be able to conduct non-discrimination tests and prepare Form 5500 for the 401K program.

- 4 -

1     •     Continue to respond to requests for information in regards to unemployment claims, audits of payroll information for 2009 from Nevada and California, sales and use tax report, and various other requests until no longer necessary.

16. The Trustee has not asked Mr. Bennyhoff to audit or otherwise certify any accounting results to him. The Trustee has asked Mr. Bennyhoff to make certain the information he does prepare is in a form that can be passed on to a certified public accounting firm for purposes of preparing tax returns for the Debtor estates.

17. The Trustee has been paying Mr. Bennyhoff for accounting-related services at the rate of $80/hr subject to increase or decrease as the Trustee deems appropriate in the exercise of his business judgment.

18. The Trustee believes that, in the capacity in which he is utilizing the services of Mr. Bennyhoff for the benefit of the estate, he is not a professional of the type for which employment approval is required under §327. Nevertheless, the Trustee has asked Mr. Bennyhoff to provide a Rule 2104 Declaration to address the concerns raised by the Committee.

19. The Trustee does not believe that Mr. Bennyhoff holds or represents an interest adverse to the estate and that he is a disinterested person as that term is defined in 11 U.S.C. § 101(14).

20. The Trustee anticipates that the estate will need the services of Mr. Bennyhoff, on a part time basis, for an additional 3-4 months.

## DISCUSSION

### Employment of Steven A. Bennyhoff

It appears from the Motion that the Committee's sole objection to Mr. Bennyhoff being engaged by the Trustee to perform services for the estate stems from the absence of a declaration pursuant to Rule 2014. Although the intimation is that Mr. Bennyhoff is not disinterested, there is no indication that there are undisclosed facts which would otherwise cause Mr. Bennyhoff to be 'interested'. To address this portion of the

discussion, Mr. Bennyhoff has filed a Declaration In Support of this Response, which contains the information required by Rule 2014.

The Trustee believes that his use of the services provided by Mr. Bennyhoff as an independent contractor does not require an application pursuant to §327. In *In re First Merchants Acceptance Corp.*, 1997 Bankr. LEXIS 2245, at *8-9 (Bankr. D. Del. Dec. 15, 1997)[1], the court formulated a nonexclusive list of six factors to be considered in determining whether an employee is a professional:

(1) <u>whether the employee controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization;</u>

Mr. Bennyhoff works at the direction of the Trustee and has no authority to act on behalf of the estate

(2) <u>whether the employee is involved in negotiating the terms of a plan of reorganization;</u>

Mr. Bennyhoff is not engaged in any negotiations for the estate.

(3) <u>whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;</u>

The Debtor was a construction company and now is in liquidation. Mr. Bennyhoff performs accounting-related work at the direction of the Trustee.

(4) <u>whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate;</u>

Mr. Bennyhoff does not have discretion or autonomy in executing duties assigned to him by the Trustee.

(5) <u>the extent of the employee's involvement in the administration of the debtor's estate: and,</u>

The Trustee is fulfilling his duties under §704 and Mr. Bennyhoff is providing services to the Trustee to enable him to do so.

---

[1] Reversed on other grounds at 198 F.3d 394 (3rd Cir. 1999).

(6) whether the employee's services involve some degree of special knowledge or skill, so that the employee can be considered a "professional" within the ordinary meaning of the term.

Mr. Bennyhoff does have specialized knowledge which the Trustee believes is particularly well suited to enable him to efficiently administer the estate. Mr. Bennyhoff does not have discretion in the performance of his duties.

Should the Court conclude that Mr. Bennyhoff is a professional, the Trustee requests that his employment be ratified under §327 and that he not be required to disgorge any monies paid to him to date.

**The Committee Should Not Be Continued**

The Committee cites to three cases which, it urges, support its continued existence. In the first case, *In re SPM Manufacturing Corp.*, 984 F.2d 1305 (1st Cir. 1993), before the case was converted, the committee was successful in negotiating with the secured creditor for a carveout for unsecured creditors. Following conversion to chapter 7, there was a dispute about the enforceability of that agreement. The committee participated in the post conversion process but the decision does not raise or address the question of whether the committee was employed in the chapter 7 case and whether it was entitled to compensation.

In *In re Lyons Transportation Lines, Inc.*, 162 B.R 460 (Bankr. W.D.Pa. 1994) the court relied upon §105(a) to keep the committee in tact and to compensate its counsel during the chapter 7. The *Lyons* court did acknowledge contrary authority in the form of *In re Dominelli*, 788 F.2d 584 (9th Cir. 1986), in which Judge Hug held as follows:

> We now turn to the question of whether a bankruptcy court may impose liability upon debtor estates for the legal representation costs of the Creditors' Committee in a Chapter 7 proceeding. The district court ruled that there are no provisions in the Bankruptcy Code or the Rules of Bankruptcy Procedure for the compensation of a creditors' committee's counsel in a Chapter 7 proceeding.
>
> We agree with the district court's conclusion. There is no provision in 11 U.S.C. § 705 (1982), the applicable statute in Chapter 7 cases, for compensation of a creditors' committee counsel. The legislative history of section 705 confirms that the omission of a compensation provision for a Chapter 7 creditors' committee attorney was intentional. When enacting section 705 of the Bankruptcy Reform Act of 1978, the Senate Committee

on the Judiciary expressly noted that there is "no provision for compensation or reimbursement of [the Creditors' Committee] counsel." Notes of Committee on Judiciary, S. Rep. No. 989, 95th Cong., 2d Sess. 94 *reprinted in* 1978 U.S. Code Cong. & Ad. News, 5787, 5880.

When faced with this precise issue, one bankruptcy court decision, *In re Willbet Enterprises, Inc.*, 43 Bankr. 90 (E.D. Pa. 1984), reached the same conclusion as the district court. The court in *Willbet* found that Congress allowed compensation to professional persons employed by a trustee or creditors' committee only in a Chapter 11 case. Id. at 92. Additionally, the court in *Willbet* rejected the argument that it could authorize employment of a creditors' committee counsel by utilizing the court's broad equitable powers. The court held that it could not use general equitable powers to authorize something which Congress had explicitly considered and limited. Id. at 92-93, (quoting *In re Wood*, 33 Bankr. 320, 322 (D. Idaho 1983)).

There is nothing in the express language of the statute that authorizes the bankruptcy court to encumber debtor estates in a Chapter 7 case with the expense of providing counsel to a creditors' committee. The legislative history indicates that this omission was intentional. Therefore, we hold that the order of the bankruptcy court was unauthorized, and we affirm the order of the district court.

788 F.2d at 586. The Ninth Circuit has determined that §105(a) may not be utilized to circumvent the Congressional decision to limit compensation to committee professionals in chapter 11 cases.

There has been no effort by the Committee to demonstrate that it has particular information relevant to the administration of this case which would justify employing counsel which would add another layer of administrative expense to this case. In fact, if the Committee members possess information which would be useful to the Trustee in administering the case, they owe a fiduciary duty to their constituency to provide that information to the Trustee.

## CONCLUSION

Based upon the foregoing, the Trustee requests the Court deny the Committee's Motion.

DATED this 7th day of June, 2010.

/S/ Keith J. Tierney
Keith J. Tierney, Trustee

- 8 -

# EXHIBIT A

Jeffrey L. Hartman, Esq., #1607
**HARTMAN & HARTMAN**
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
Telephone: (775) 324-2800
Facsimile: (775) 324-1818
notices@bankruptcyreno.com

E-Filed 11/16/09

Attorneys for Debtors

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

IN RE:

WES CONSTRUCTION COMPANY,
INC., a Nevada corporation,

HEAVY EQUIPMENT SERVICES,
LLC, a Nevada limited liability company,

TRUCKING SERVICES, LLC,
a Nevada limited liability company,

Debtors.
_____/

CASE NO. BK-N-09-52177-GWZ (Lead)
CASE NO. BK-N-09-52178-GWZ
CASE NO. BK-N-09-52181-GWZ
(Jointly Administered)

CHAPTER   11

**STATUS REPORT**

Hearing Date: 11/19/09
Hearing Time: 2:00 p.m.

WES Construction Company, Inc. ("WES") files this report to provide the Court and parties in interest with the status of the case.

1. These chapter 11 cases were filed on July 6, 2009 and, at that time, operations were continuing.

2. At the end of August 2009, the Court determined that Alan Smith, Esq. could no longer act as counsel for the Debtors and the WES Board of Directors engaged Hartman & Hartman to act as Debtors' counsel.

3. In September, the Board of Directors, consisting of Mark Smith, Dave Clark and George Tapia ("Directors") began discussions with Roy Walker ("Walker") about a sale of what was unofficially referred to as the 'utilities division' of WES.

4. At the same time, although WES was continuing to operate, it had a shortage of working capital and was approaching possible breach of contracts for public works projects in Minden, Nevada, Reno, Nevada and Tucson, Arizona ("Public Works Contracts").

5. Walker is a guarantor of the payment and performance bonds issued in

1  conjunction with the Public Works Contracts.

2  6. Tentative agreements were reached and the Board determined to cease all operations as of August 31, 2009. The Board kept several accounting personnel on the payroll in order to process collections of accounts receivable and continue to pay those payables related to the wind down of operations such as utilities, insurance, and subcontractors due monies under post-petition contracts.

7. At the same time, the Board determined to liquidate the equipment owned by WES and sought and obtained approval of an auction to be conducted by Ritchie Bros. Auctioneers ("RBA"). The auction was conducted on October 16, 2009. The majority of the equipment sold was subject to a security interest in favor of MB Financial ("MB"). Vehicles which were subject to certificates of title were also sold at the auction. MB received net proceeds of approximately $310,000 and WES received net proceeds of approximately $70,600.

8. On November 13, 2009, WES filed its Motion for an order authorizing the sale of personal property free and clear of liens and encumbrances together with the assumption and assignment of specific executory contracts, and rejection of an unexpired lease of non-residential real property, effective as of September 1, 2009. If the Court grants the Motion, the WES estate will receive approximately $290,000 in net proceeds, subject, however to a determination by agreement, or by the Court, as to whether MB holds a security interest in the proceeds of the sale of the utilities contracts.

9. On October 23, 2009, Lightning Auctions conducted a sale of miscellaneous small tool and parts items at the WES yard on Parr Circle. Net proceeds from that sale total approximately $12,000.

10. In September, the Board agreed that $662,000 of MB's cash collateral being held could be released to MB. The adversary proceeding filed by the Debtors against MB is pending. There are two claims for relief: the first claim alleges a preferential transfer in the amount of approximately $350,000, the second claim alleges equitable subordination under §510(c). MB has filed an answer, asserting a subsequent advance defense under §547(c)(4)

and denying allegations related to the subordination claim. The Unsecured Creditors Committee is investigating the merits of the subordination claim.

11. WES has significant pre-petition accounts receivable in which MB holds a security interest: DR Horton, $199,000; First Gold, $167,000; R&K Homes, $290,000; St James Village, $489,000; Stormo Investments, $114,000; Town of Minden, $213,000; West Coast Contractors, $67,000. Certain of these receivables may not be collectable, however, WES has agreed with MB to assign those receivables to MB, together with all available documentation to support those claims. Where necessary, MB's counsel will also substitute in as counsel to pursue these claims.

12. Numerous claims asserted against WES are potentially covered by insurance and plaintiffs have sought stipulations for relief from the automatic stay to pursue recovery to the extent of insurance coverage. Self insured retention is a problem in some of these matters.

13. As of the claims bar date, 89 claims totaling $26 million have been filed.

14. There are three bank accounts for WES:

| | |
|---|---|
| Payroll account at Heritage Bank as of October 31 2009 | $ 34,456.60 |
| DIP account Heritage Bank as of October 31, 2009 | $389,579.47* |
| Hartman & Hartman Trust Account as of October 31, 2009 | $155,165.65 |

* This account is primarily cash collateral in which MB holds a security interest.

## SUMMARY OF ANTICIPATED ASSETS

The following is an estimate of the anticipated assets in the estate:

| | |
|---|---|
| H&H Trust Account | $155,000 |
| Payroll account | 34,456 |
| RBA Auction | 70,600 |
| Lightning Auction | 12,000 |
| Add'tl post petition A/R | 50,000 |
| Walker sale | 290,000** |
| Preference claim | 85,000 |
| Equitable subord. claim. | ? |
| | $697,056 |

** MB may have a security interest in the utilities contracts being assigned to Walker representing $120,000 of this amount.

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800

In addition, there may be avoidance claims that can be pursued to generate other monies for the estate.

Dated this 16th day of November, 2009.

        HARTMAN & HARTMAN

        /s/ Jeffrey L. Hartman
        Jeffrey L. Hartman, Esq.
        Attorneys for Debtors

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800