Keith J. Tierney
Trustee
10580 N. McCarran Blvd., Bldg. 115-403
Reno, NV 89503
(775) 622-3850

E-Filed 6/7/2010

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

IN RE:

WES CONSTRUCTION COMPANY, INC., a Nevada corporation,

HEAVY EQUIPMENT SERVICES, LLC
A Nevada limited liability company,

TRUCKING SERVICES, LLC,
A Nevada limited liability company,

Debtors.

CASE NOS. BK-N-09-52177-GWZ
BK-N-09-52178-GWZ
BK-N-09-52181-GWZ
(Jointly administered under 09-52177)

CHAPTER 7

DECLARATION OF KEITH J. TIERNEY IN SUPPORT OF OPPOSITION TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR ORDER 1) RECONSIDERING ORDERS APPROVING CHAPTER 7 TRUSTEE'S EX PARTE APPLICATIONS TO EMPLOY AND TO PAY STEVE BENNYHOFF; 2) REQUIRING MR. BENNYHOFF TO DISGORGE FEES PAID TO HIM DURING THE CHAPTER 11 PHASE OF THIS CASE; AND 3) PROVIDING FOR THE CONTINUANCE OF THE § 1102(a)(1) UNSECURED CREDITORS' COMMITTEE

Hearing Date: June 21, 2010
Hearing Time: 2:00 p.m.

_____/

Keith J. Tierney, under penalty of perjury of the laws of the United States, declares:

1. I am the duly appointed and acting chapter 7 trustee in this case since January 2010.

2. At the time I was appointed in this case, the chapter 11 operations had ceased several months earlier and there were part-time bookkeepers handling the minimal

activities ongoing at the time.

3. In order to fulfill my obligations under §704, I determined that I needed the services of someone with a background in construction and construction accounting to assist me in that regard. Prior to my appointment, Mark Smith, the acting chief officer for WES, had engaged the services of Steve Bennyhoff to assist in certain accounting related activities because the WES CFO, Michael Brandt, had resigned. Mr. Smith gave Mr. Bennyhoff a good recommendation and I determined to engage Mr. Bennyhoff because, in my opinion, he is qualified, and had attained a significant degree of 'institutional knowledge' about the books and records of WES and the problems to be addressed. Moreover, it made no sense to me to bring on yet another individual who would have a steep learning curve at additional expense to the estate. Finally, I was unwilling to engage an accounting firm to do the work because, in my experience, it would want to staff the matter with junior accountants whose work would then need to be reviewed by more senior people. My opinion, based upon my experience, is that engaging Mr. Bennyhoff provided the most cost-effective alternative available to the estate for the necessary accounting related functions.

4. As set forth in Mr. Bennyhoff's Rule 2014 Declaration, the following describes many, but not all of the duties being performed by Mr. Bennyhoff at my direction:

- Made calculations and booked journal entries adjusting the accounts for the items sold at the Ritchie Bros. and Lightning auctions.
- Located the hard copy payroll records and created spreadsheets to capture the weekly payroll totals to be able to prepare W-2s, as well as capture payment information for 1099s.
- Purchased software and supplies, then created, printed and mailed W-2's and 1099's.
- Terminated AT&T land and wireless lines still active in February.
- Terminated licenses, policies, and services no longer needed by WES

Construction.

- Interfaced with insurance companies and State agencies to provide data to assist with year-end information reporting and audits.
- Reconciled Heritage Bank checking accounts and Hartman Trust account to WES Construction general ledger.
- Interfaced with Lisa and Kandi on an on-going basis to help answer questions and review
- Facilitated the boxing and return of WES Construction's mailing machine to Pitney Bowes.

In addition, the following tasks still need to be completed:

- Coordinate with R Construction in preparing an income statement that determines the net profit resulting from Roy Walker's completion of the utility contracts that were unfinished as of 9/1/09.
- Reconstruct from hardcopy reports financial information for WES Construction to enable the accounting firm to prepare financial statements and tax returns for 2009.
- Calculate profit/loss on the sale and book journal entries for WES Trucking, Inc. auction items.
- Prepare trial balances for 2008 and 2009 for WES Trucking, Inc. and Commercial Snow Clearing LLC to give to the accounting firm for financial statement preparation and tax return filing.
- Compile data to provide to ING to be able to conduct non-discrimination tests and prepare Form 5500 for the 401K program.
- Continue to respond to requests for information in regards to unemployment claims, audits of payroll information for 2009 from Nevada and California, sales and use tax report, and various other requests until no longer necessary.

5. I have not asked Mr. Bennyhoff to audit or otherwise certify any accounting results to me. I have asked Mr. Bennyhoff to make certain the information he does

prepare is in a form that can be passed on to a certified public accounting firm for purposes of preparing tax returns for the Debtor estates.

6. I have been paying Mr. Bennyhoff for accounting-related services at the rate of $80/hr subject to increase or decrease as I deem appropriate in the exercise of my business judgment.

7. I believe that, in the capacity in which I am utilizing the services of Mr. Bennyhoff for the benefit of the estate, he is not a professional of the type for which employment approval is required under §327. Nevertheless, I have asked Mr. Bennyhoff to provide a Rule 2104 Declaration to address the concerns raised by the unsecured creditors' committee.

8. I do not believe that Mr. Bennyhoff holds or represents an interest adverse to the estate and I believe he is a disinterested person as that term is defined in 11 U.S.C. § 101(14).

DATED this 7th day of June, 2010.

/s/ Keith J. Tierney
Keith J. Tierney