John White, Esq., Bar #1741  
White Law Chartered  
335 West First St.  
Reno, NV 89503  
775-322-8000  
FAX: 775-322-1228  
john@whitelawchartered.com  
Attorney for the Official Committee of Unsecured Creditors

E-filed: June 15, 2010

UNITED STATES BANKRUPTCY COURT  
DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br>WES CONSTRUCTION COMPANY,<br>a Nevada corporation,<br>HEAVY EQUIPMENT SERVICES, LLC,<br>A Nevada limited liability company,<br>TRUCKING SERVICES, LLC,<br>A Nevada limited liability company.<br>Debtors-in-Possession | Case No. BK-N 09-52177-GWZ<br>Case No. BK-N 09-52178-GWZ<br>Case No. BK-N 09-52181-GWZ<br>[Jointly Administered under Case No. BK-N 09-52177-GWZ]<br><br>Chapter 7<br><br>CONSOLIDATED REPLY OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO TRUSTEES' AND MB FINANCIAL'S RESPONSE TO MOTION FOR ORDER 1) RECONSIDERING ORDERS APPROVING CHAPTER 7 TRUSTEE'S MOTION TO EMPLOY AND APPLICATIONS TO PAY STEVE BENNYHOFF 2) REQUIRING MR. BENNYHOFF TO DISGORGE FEES PAID TO HIM DURING THE CHAPTER 11 PHASE OF THIS CASE; AND 3) PROVIDING FOR THE CONTINUANCE OF THE § 1102(a)(1) UNSECURED CREDITOR'S COMMITTEE.<br><br>Hearing Date:  June 21, 2010<br>Hearing Time:  2 p.m. |

Comes now the 11 USC Sec. 1102 Committee of Unsecured Creditors ("Committee") and unsecured creditors Specialty Equipment Services, LLC, Active Assets Management LLC and

WHITE LAW CHARTERED  
LAWYERS  
20TH CENTURY BLDG.  
335 W. FIRST STREET  
RENO, NV 89503  

T (775) 322-8000  
F (775) 322-1228  

1

Lyle Kibbe, who reply to the Trustee's and to MB Financial's June 7, 2010 Opposition to the Committee's Motion to Reconsider (hiring of Steve Bennyhoff).

STANDING ISSUE

The Committee does not here quarrel with MB Financial, NA's ("Bank") second assertion that, neither the Committee nor its counsel is entitled to compensation from the Debtor's estate for post-conversion Chapter 7 work. However, as neither the Committee nor its counsel has applied for compensation for post-conversion work, that the Bank's argument is not at issue.

The Committee does quarrel with the Bank's assertion that the moving creditors, including the Committee, have no standing to insist that the Trustee be represented by disinterested professionals, as well as with the Bank's assertion that the Committee is without standing to complain that Mr. Bennyhoff was improperly paid during the Chapter 7 phase of this Case. The Committee's request for disgorgement of fees Mr. Bennyhoff received in the Chapter 11 comes well within the duties of the Committee proscribed at 11 USC Sec. 1103, and particularly subsection 1103(d) (Perform such other services as are in the interests of those represented).

The Bank cites to two cases where an Sec. 1102 Committee was allowed to continue to function following conversion, but claims they are irrelevant (and that they apparently represent a minority position). In one of them, In re SPM Mfg. Corp. 984 F.2d 1305 (C.A.1 (Mass.),1993), the 1102 Committee's continuing function was tied to issues carrying over from the Chapter 11 following conversion. That is largely the case here, as the Committee seeks an order requiring Mr. Bennyhoff to disgorge payments he received as a professional person without Court approval in the Chapter 11 phase of this Case. It is not much of a leap for the Committee to pose a similar issue in the Chapter 7 portion of this case, to wit the determination of Mr. Bennyhoff's status as a professional or a paraprofessional impacts both the Chapter 11 and the Chapter 7 phases of this Case. Issues relating to the disgorgement of Mr. Bennyhoff's fees in the Chapter 11 are directly applicable to his qualifications to advise the Chapter 7 trustee.

The Committee also notes that the Court, in the unique circumstances of this Case, contemplated the possible continuance of the Committee:

On November 19, 2009, at the hearing before this Court on the Bank's Motion to Convert, this Court stated:

3:15:10

> I see no reason not to convert. And that does not mean that the equitable subordination claim disappears as I've already indicated.

3:15:20

> And I understand also what Mr. White would seek to do in terms of allowing the committee to continue to exist and provide assistance to a chapter 7 trustee. And I think that's a matter of discussing that with the chapter 7 trustee and the Office of the US Trustee. And if an agreement can be arrived at that is certainly one avenue. If agreement cannot be obtained then file the appropriate motion and I'll make that determination.

3:15:59

> I am going to deny without prejudice the application of the committee to retain an accountant. Because until the determination is made by the chapter 7 trustee how he or she wishes to proceed I think would be premature at this time. So I'm denying that without prejudice.

"PROFESSIONAL" ISSUE:  If Mr. Bennyhoff is a professional, he is not disinterested.

If a professional, Mr. Bennyhoff must file an affidavit of disinterestedness (Rule 2014), something he has so far failed to do. 11 USC Sec. 327(a), Bank.R.Civ.P. 2014.  Until he does, it is impossible to employ the Code's procedures designed to determine whether he is interested. Rule 2014 puts the burden on the Trustee to prove that any professional he wishes to hire is disinterested.  The procedure being employed by the Trustee in this case (putting the burden on the creditors to prove that the professional is interested) is not contemplated by the Code.

The Trustee referred to Mr. Bennyhoff as a "CPA" in the February 12, 2010 Application to Hire him.

11 USC Sec. 101(1) defines "accountant" as "... an accountant authorized under applicable law to practice public accounting...".  Black's Law Dictionary (7th Ed) defines "accountant" as:

WHITE LAW CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

3

> 1. A person authorized under applicable law to practice public accounting; a person whose business is to keep books or accounts, to perform financial audits, to design and control accounting systems, and to give tax advice.
> ...

and a "certified public accountant" as

> An accountant who has satisfied the statutory and administrative requirements to be registered or licensed as a public accountant.

The Committee assumed the Trustee was seeking to hire Mr. Bennyhoff as a professional because

1. On February 12, 2010, he filed an Application to Employ Mr. Bennyhoff. It cites to no authority. However, since undersigned knows of nothing in the Code that requires the court to authorize the hiring of a paraprofessional, the Application was presumably filed pursuant to Rule 2014, which applies only to professionals;

2. The Trustee represented in those Applications that Mr. Bennyhoff was a CPA. In fact the Application to Employ Mr. Bennyhoff is entitled "Exparte Motion to 1) Employ Steve Bennyhoff, CPA and 2) Pay Fees."

3. The invoices (attached as Exhibit 3 to the Brandon Declaration, filed herewith) show that Mr. Bennyhoff is engaging in the types of activities conducted by accountants in their capacity as professionals.

Reference to the Trustee's Opposition to this Motion to Reconsider also shows that the Trustee is using Mr. Bennyhoff as an accountant. For example. at page 4, line 16, (tasks still to be completed) the Trustee indicates that he has asked Mr. Bennyhoff to "Coordinate with R Construction in preparing the income statement that determines the net profit resulting from Roy Walker's completion of the utility contracts that were unfinished as of 9/1/09."

The Committee was concerned that there was no Affidavit of Disinterestedness filed by Mr. Bennyhoff in conjunction with the Trustee's Application to hire him. After all this time, one might conclude that the Trustee is refusing to require Mr. Bennyhoff to file a 2014 affidavit of disinterestedness. The Trustee instead regularly made periodic exparte applications to pay Mr. Bennyhoff. True, the Trustee has now finally filed a Declaration in which Mr. Bennyhoff states

that he "believes" himself to be disinterested. However it is not in the form or substance of a Rule 2014 Declaration. It does not state that he is disinterested, nor does it use the wording referenced in Rule 2014 ("... *The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, .... . their respective attorneys and accountants, ....*"). In addition to stating a belief, the new Bennyhoff Declaration notes that he and Mike Brandt (one of the persons the Committee wants the Trustee to investigate - see Committee's May 19, 2010 letter to Trustee, attached as Exhibit 1 to the Brandon Declaration, filed herewith) interacted on accounting matters on behalf of sister companies before both came to work for Debtor.

The Committee's March 19 letter to the Trustee suggested that the estate might have a cause of action against the CFO Group (the local accounting firm that did the Debtor's accounting work and pre-and post-petition). The principal in CF0 Group is Dan Allen, CPA. The Committee also suggested in that letter that the Trustee look into possible preferences made when Mark Smith was Debtor's acting COO during the pendency of the Chapter 11, and Michael Brandt was the Debtor's CFO, and, later, a paid Chapter 11 consultant.

Attached as Exhibit 3 to the accompanying Brandon Declaration is a page from the Bulls internet blog which shows that Mr. Bennyhoff, Michael Brandt, Dan Allen and Mark Smith are all members of a small and apparently exclusive Men's club called the Bulls. This certainly does not make the Committee comfortable that the Trustee is receiving independent advice from Mr. Bennyhoff concerning whether a cause of action might exist against Mark Smith, Michael Brandt and/or Dan Allen.

Finally, the Bennyhoff Declaration does not address his involvement in the Chapter 11 phase of this case, nor how much he was then paid. The first invoice Mr. Bennyhoff filed in the Chapter 7 phase of this case starts as Invoice "13," leading one to assume that he submitted 12 invoices in the Chapter 11 phase of this case. If he was acting as a professional, having not been approved by the Court, he should suffer disgorgement, at least so long as no order approving his hiring in the Chapter 11 Case has been entered. Finally, neither Mr. Bennyhoff nor the Trustee

5

have yet complied with the Committee's request for copies of Mr. Bennyhoff's invoices 15, 16, 17, 18 and 19, all apparently submitted and paid in the Chapter 7 portion of this Case.

PARAPROFESSIONAL ISSUE:

If a paraprofessional, Mr. Bennyhoff may not be required to file an affidavit of disinterestedness (though some level of disinterestedness is apparently required by anyone working for a trustee - see *Mosser v. Darrow*, 341 US 267, 271 (1951): "These strict prohibitions would serve little purpose if the trustee were free to authorize others to do what he is forbidden."). However, if a paraprofessional, Mr. Bennyhoff must be compensated by the Trustee rather than by the estate. *In re Jenkins* 188 B.R. 416 9th Cir.BAP (Cal.),1995.

The *Jenkins* court notes, at page 419:

> The central question in the this case is what Congress intended the term "trustee's services" to encompass in enacting the section 326(a) limitation on compensation for such services. Appellant United States Trustee contends that the term includes both services performed by the trustee personally and services performed by any paraprofessional assisting the trustee. Appellee chapter 7 trustee contends that because section 330(a) refers to both services performed by the trustee and services performed by a paraprofessional employed by the trustee, the term "trustee's services" in section 326(a) includes only services performed by the trustee personally.
>
> Neither the statutory language nor the legislative history provides any direct answer. The term "trustee's services" is not defined in either the Code or the legislative history. Furthermore, although section 330(a) states that it is "subject to" section 326, neither the Code nor the legislative history explains the relationship between the section 326(a) limitation on compensation for "trustee's services" and the language in section 330(a) referring to services "rendered by such trustee ... and by any paraprofessional persons employed by such person."
> The courts have split on the issue. A majority of the published decisions hold that section 326(a) limits the compensation that a trustee may receive for both services performed personally and services performed by a paraprofessional.

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

6

For the reasons stated below, we agree with the majority view and hold that the term "trustee's services" in section 326(a) includes both services performed by the trustee personally and services performed by a paraprofessional employed by the trustee.

First, the language of section 330(a) treats services performed by paraprofessionals employed by the trustee as a part of the trustee's services. Section 330(a) authorizes payment of compensation only to a trustee, an examiner, a professional person employed under section 327 or 1103, or the debtor's attorney. It does not authorize the estate to pay compensation directly to a paraprofessional. The statutory language regarding paraprofessionals merely permits the compensation paid to the trustee, etc., to be calculated in light of both the services performed by the trustee personally and the services performed by any paraprofessional persons working under the trustee. This approach is consistent with the nature of paraprofessional services. A paraprofessional helps a supervising professional perform professional services. Thus, a paraprofessional working for a trustee is a paratrustee, helping the trustee to perform "trustee's services."

## **CONCLUSION**

The Committee and joining creditors respectfully request an order:

1. Declaring whether Mr. Bennyhoff is a professional or paraprofessional.

2. That if Mr. Bennyhoff is a professional,

    1. Bennyhoff disclose the total amount of fees he received prior to Chapter 11 phase and disgorge that amount due to Debtor's failure to obtain Court approval of his employment, unless he obtains such an order, nunc pro tunc, after filing a proper 2014 Declaration of Disinterestedness.

    2. Mr. Bennyhoff and the Trustee comply with the requirement to affirmatively state disinterestedness in the form and manner provided in Fed.R.Bank.P 2014.

    3. Submit fee applications which, as to payment, are on equal footing with all professionals in this case.

    4. That, following receipt of a proper Declaration of Disinterestedness by Mr. Bennyhoff, the Committee and joining creditors be given a reasonable time to object to Mr. Bennyhoff's Chapter 7 hiring and/or fees, or expressly allowed to object at the time of any Bennyhoff interim fee application.

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

7

3. That if, on the other hand, Mr. Bennyhoff is a paraprofessional,

   1. The Trustee be directed to pay Mr. Bennyhoff from his standard Trustee's fee rather than from the assets of this Estate.
   2. The Trustee be directed to reimburse the estate all fees heretofore paid from the Estate in the Chapter 7 phase of this Case.

4. The Committee be allowed to continue to assist Trustee and the Court.

5. The Trustee keep the Committee informed as to relevant matters and consider the Committee's request to employ forensic accountant, denied without prejudice on November 19, 2010.

Respectfully submitted this 15th day of June, 2010.

                                                     John White, Esq.

WHITE LAW CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

8