Jeffrey L. Hartman, Esq. #1607
**HARTMAN & HARTMAN**
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
Telephone: (775) 324-2800
Facsimile: (775) 324-1818
E-mail: notices@bankruptcyreno.com

E-Filed 1/21/11

Attorney for Debtors

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

IN RE:

WES CONSTRUCTION COMPANY, INC., a Nevada corporation,

HEAVY EQUIPMENT SERVICES, LLC, a Nevada limited liability company,

TRUCKING SERVICES, LLC, a Nevada limited liability company,

Debtors.

CASE NO. BK-N-09-52177-GWZ (Lead)
CASE NO. BK-N-09-52178-GWZ
CASE NO. BK-N-09-52181-GWZ
(Jointly Administered)

CHAPTER 7

**TRUSTEE'S OBJECTION TO PREMIUM FINANCING SPECIALISTS, INC.'S APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE**

Hearing Date: 2/1/11
Hearing Time: 2:00 p.m.

Keith Tierney, chapter 7 Trustee, objects to the Application For Allowance and Payment of Administrative Expense ("Application") filed by Premium Financing Specialists, Inc. ("PFS"). Because the PFS request is confusing and not supported by any documentation, it is necessary to review the history of the transaction to determine whether it is entitled to an administrative expense claim. The Trustee believes it is not. As the Court is aware, the Trustee was appointed in this case approximately six months after the petition date and does not have first hand knowledge of certain of the facts relevant to this matter.

1. As noted in the Application, PFS previously received an Order Vacating Automatic Stay with respect to the transaction in March 2010. **DE 283.** The Motion, **DE 254**, which lead to the Order, included a recitation of the facts surrounding the origination of the insurance agreement and the premium finance agreement dated June 8, 2009.

2. As noted, the insurance policy was put in place in June before the chapter 11

1 | bankruptcy case was filed on July 6, 2009 and was for a period of one year.

2 |     3. Under the terms of the premium financing arrangement WES made a cash
3 | payment of $61,220 and was thereafter obligated to pay nine installments of $13,646.20 on
4 | the 1st day of each month.

5 |     4. According to the Motion, WES authorized PFS to cancel the policies and to
6 | obtain all unearned and return premiums. **DE 254, page 3, ¶10.**

7 |     5. According to the Motion, WES defaulted by failing to pay the premiums due on
8 | December 1, 2009 and January 1, 2010. **DE 254, page 3, ¶11.**

9 |     6. Attached as an exhibit to the Motion is a series of pages identified as 'Account
10 | Status' for this transaction. **DE 254, pages 12-15.** The Account Status indicates that on
11 | December 7, 2009, PFS issued a Notice of Intent To Cancel.

12 |     7. PFS elected to not cancel the policies, as it apparently was entitled to do under the
13 | contract. Instead, it filed the Motion to obtain an Order which was written broadly so as to
14 | include the right to cancel, if there was any question as to the effect of the automatic stay.

15 |     8. PFS, however, did not cancel the policies and instead, let the premiums continue to
16 | accrue. It was not until November 1, 2010, three months after the expiration of the policy
17 | period that PFS canceled the policies. **DE 384, page 2, ¶11.** The Application also does not
18 | include a calculation which demonstrates how it arrives at the claimed balance of $19,152.96.

19 |     9. Importantly, in November and December 2009, the Court considered and approved
20 | the sale of certain of the WES construction business to an entity operated by Roy Walker.
21 | **DE 237.**

22 |     10. The Trustee believes that Walker's new entity continued to pay the premiums due
23 | to PFS but has, to date, not been able to verify such payments.

24 |     11. In addition, because PFS has not supplied a copy of the underlying policies, the
25 | Trustee is uncertain as to the calculations for premiums due. The Trustee believes that at
26 | least one of the policies may have been 'volume based', i.e., the premium would have been
27 | calculated based upon the dollar volume of contracts processed by WES. For example, if, on
28 | an annualized basis, WES processed $20,000,000 in contracts, its insurance needs would be

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800

greater than would be required if the volume was $10,000,000 per year. The Trustee believes that if the underlying policies were volume based, then they also would include provisions related to premium refunds following an audit at the end of the policy period.

12. Finally, PFS is seeking payment under §503. Generally speaking, there must have been a benefit to the estate. Once PFS obtained its Order vacating the stay, it was entitled to, and should have canceled the policies.

## CONCLUSION

The Trustee believes that PFS has not demonstrated that it is entitled to an administrative expense in excess of $19,000. The Trustee believes that Roy Walker or his company, continued to pay the premiums due under the contract and will supplement this Objection between now and the hearing date. However, even if it is determined that Walker did not pay the premiums, the Trustee believes it is necessary to review the underlying policies to ascertain whether they were volume based and whether the estate may be entitled to a refund.

For the forgoing reasons, the Trustee objects to the Application as presented based upon absence of the underlying policies.

Dated this 21st day of January, 2011.

                **HARTMAN & HARTMAN**

                /S/ Jeffrey L. Hartman
                Attorney for Trustee Tierney